[Civ. No. 6384. First Appellate District, Division One.—January 28, 1929.]

JESSIE E. WICKHAM, Respondent, v. B. F. BECKER, as Chief of Police, etc., et al., Appellants.

444

Crosby, Naus & Crosby, George M. Naus and Girard N. Richardson for Appellants.

Lovett K. Fraser and Cleveland R. Wright for Respondent.

THE COURT.—Plaintiff is the owner of certain premises situate on the northerly corner of Grand and Linda Avenues, in the City of Piedmont, which heretofore have been utilized for residential purposes. Shortly prior to the commencement of this suit she concluded to convert the same into business property and to that end made arrangements to construct two stores thereon. The city's officers threatened that if she proceeded with such construction she would be arrested for the alleged violation of a zoning ordinance enacted by said city on May 21, 1925; and thereupon she commenced this suit to have said ordinance declared void and to enjoin the city and its chief of police from enforcing

its terms. Upon trial a decree was granted in her favor from which defendants have appealed.

The city is operated under a freeholders' charter approved by the legislature in 1923 (Stats. 1923, p. 1564), and the territory embraced within its corporate limits contains 1,151 acres. It is contiguous to and entirely surrounded by the city of Oakland, and at the time of trial Piedmont's population was approximately 9,000 people. Section 41 of the charter is entitled "Zoning System," and reads as follows: "The City of Piedmont is hereby declared to be primarily a residential city and the Council shall have power to establish such zoning systems within the City as may in its judgment be most beneficial and in such zoning systems may prohibit the erection or maintenance of any class or classes of buildings within certain areas and may classify and re-classify the zones established. . . . " Proceeding under the authority thus granted, the legislative body of the city enacted the zoning ordinance in question, which purports to divide the city into three zones. Section 3 of the ordinance relates to zone "A" and provides that the area included therein shall be occupied by none other than single family dwellings, schools, and churches, together with the usual accessories, including private garages for the accommodation of not more than four automobiles. Section 4, dealing with zone "B," restricts its occupation to similar uses and also to the use of any "public institution of an educational or philanthropic nature, Masonic or other fraternal building, and the usual accessories located on the same lot. . . . " Section 5 reads as follows: "No building, structure or improvement shall be erected, constructed, established, altered or enlarged in Zone 'C,' which is designated, arranged or intended to be occupied or used for any purpose other than those specified in Sections 3 and 4 thereof, and that of apartment houses, flats, stores or shops for the conduct of a retail business, theaters, offices of dentists and physicians, studios or any retail business or office not prohibited by law or ordinance now in force or which may be hereafter enacted."

The law upon the subject of municipal zoning is fully discussed and apparently definitely settled by a number of recent decisions of the supreme court, notably *Miller* v. *Board of Public Works,* 195 Cal. 477 [38 A. L. R. 1479,

446

234 Pac. 381], *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388], *In re White,* 195 Cal. 516 [234 Pac. 396], and *Pacific Palisades Assn.* v. *City of Huntington Beach,* 196 Cal. 211 [40 A. L. R. 782, 237 Pac. 538] ; and it is held generally that the enactment by a municipality of an ordinance pursuant to a general comprehensive zoning plan, based upon considerations of public health, safety, morals, or the general welfare, applied fairly and impartially, which ordinance regulates, restricts, and segregates the location of the industries, the several classes of business, trade, or calling, and the location of apartment or tenement houses, clubhouses, club residences, and the several classes of public and semi-public buildings, is a valid exercise of the police power and is not in contravention of the fundamental law of the state.

However, as indicated, such zoning must be reasonably related to the health, safety, morals, and general welfare of the community, and it must be reasonably necessary; and in this regard one of the limitations placed upon such power is that the ''municipality is not permitted under the guise of regulating business and segregating it to a particular district, to grant a monopoly to business establishments and enterprises already situated in the unrestricted districts'' (*Pacific Palisades Assn.* v. *City of Huntington Beach, supra; In re White, supra*). The latter case involved the zoning ordinance of the town of Atherton, San Mateo County, and, in declaring the entire ordinance void, the court said: ''It appears in the instant case that the board of trustees undertook to zone the town into two districts, one of which was devoted to residential uses and the other to business uses. This was in effect a legislative finding that the maintenance of both such districts was necessary to the public welfare. It was the duty, therefore, of the board of trustees when zoning the town to make adequate provision for both such uses. That adequate provision for the business district was not made is at once apparent. It is true that some provision was made for business, that is to say, one and one-tenth acres out of 2500 acres was designated as an 'unrestricted district' in which buildings to be 'devoted to any lawful use' might be constructed. But it is apparent from the fact that the 'unrestricted district' was already fully occupied by a gasoline

station and a restaurant to the exclusion of new business uses, that the board of trustees was limiting the 'unrestricted district' to business enterprises already established and to the exclusion of any future business development. The ordinance in effect grants a monopoly to the business establishments already situate in the one and one-tenth acres of the 'unrestricted district.' In other words, under the guise of regulating business and segregating it to a particular district, the ordinance in fact prohibits all business save and except that of the favored two already established.''

The situation presented here, with respect to the creation of a business monopoly, is to all intents and purposes the same as the one existing there. Here, too, the legislative body of the city adopted a zoning ordinance creating both residential and business districts, which, as there stated, was in effect a determination that both such districts were necessary to the public welfare. Consequently, as there held, it was the duty of the legislative body to make adequate provision for both such uses. This it failed to do; but, on the contrary, as was done in the Atherton case, the municipality limited the unrestricted district to business enterprises already established, to the practical exclusion of any further business development. With respect thereto the record reveals that in creating the so-called business district the city selected two distinct areas situate in different sections of the city. Together they contain less than one acre of land. One parcel, the smaller one, is situate on the southerly corner of Grand and Linda Avenues, directly opposite plaintiff's property. It has a frontage of only 75 feet on Grand Avenue and 125 feet on Linda Avenue, and at the time of the enactment of the ordinance was completely occupied by two stores—a general market and a drug-store—leaving no available space whatever for the development of future business. The other or larger area includes both sides of a portion of Highland Avenue at its junction with Magnolia Avenue. However, the entire westerly side of Highland Avenue, within said area, is owned by the city, and consequently cannot be utilized for private business purposes; and the entire easterly side, within said area, with the exception of a single lot having a frontage of 50 feet and a depth of 70 feet, was entirely occupied at the time the ordinance was passed by four established places

of business, namely a grocery-store, a drug-store, a candy-store and a gasoline station, the vacant lot lying between the gasoline station and one ·of the stores, and which at the time of trial, so the trial court found, was being held by the owners thereof for speculation at an exorbitant price. Obviously, therefore, at the time of the adoption of the or· dinance there was no available ground. left within either area for future business development, except said vacant lot; and from the dimensions thereof (50x70 feet) it cannot be reasonably said to constitute "adequate provision" for the building of apartment houses, flats, theaters, and the other various kinds of business enterprises which the zoning ordinance purports to permit. The plain effect of the ordinance is, therefore, to prevent all business within the city except and save that of the favored places already established and to grant to such places a business monopoly; and upon that ground the trial court was correct, in our opinion, in declaring said ordinance void in so far as it affected plaintiff's property. (*In re White, supra; Pacific Palisades Assn.* v. *City·of Huntington Beach, supra.*) ██ As held in *Zahn* v. *Board of Public Works, supra,* for the purposes of zoning, it is not necessary that existing uses shall be removed (see, also, *Spector* v. *Building Inspector,* 250 Mass. 63 [145 N. E. 265]; *City of Aurora* v. *Burns,* 319 Ill. 84 [149 N. E. 784]). But evidently such exemption may be accomplished without creating a monopoly.

██ The judgment entered in the action, besides nullifying said ordinance in so far as it affected plaintiff's property, decreed as matter of law in paragraphs 1, 2, and 4 thereof that plaintiff's property is "business property in a business district, and may be used for business purposes"; also that "she is hereby permitted to build stores on her property . . . according to the plans and specifications on file"; and that the city and its officers be enjoined from "interfering in any way or from preventing plaintiff or her agents from constructing stores on her property . . . in conformity with the building laws of the city of Piedmont or in conformity with her plans and specifications on file." In this respect the judgment, in our opinion, goes too far, for the reason that the ordinance being nullified, the municipality doubtless has the power under its charter provision to revise its zoning scheme entirely or to adopt a

new one, in such manner as to eliminate the objectionable feature of a business monopoly; and that being so, it was beyond the authority of the court in our opinion to indicate the nature or extent of the zoning scheme the municipality should thereafter adopt, or to say where the lines of the different zones should be drawn or what particular property should or should not be included therein, or otherwise to interfere with the lawful exercise of the municipal legislative power. Such, in our opinion, is the effect of paragraphs 1, 2, and 4 of the judgment, as we construe them. As said in *Miller* v. *Board of Public Works, supra,* "It is scarcely necessary to reiterate here the well-recognized principle that courts are loath to substitute their judgment as to the necessity for a particular enactment for the legislative judgment as to the need of such enactment with reference to the exercise of the police power. A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. . . . The courts may differ with the legislature as to the wisdom and propriety of a particular enactment as a means of accomplishing a particular end, but as long as there are considerations of public health, safety, morals, or general welfare which the legislative body may have had in mind, which have justified the regulation, it must be assumed by the court that the legislative body had those considerations in mind and that those considerations did justify the regulation. (*State ex rel. Civello* v. *City of New Orleans* (154 La. 271 [33 A. L. R. 260, 97 South. 440]), *supra.*) In *Ex parte Hadacheck* (165 Cal. 416 [L. R. A. 1916B, 1248, 132 Pac. 584]), *supra,* the court held in effect that, when the necessity or propriety of an enactment was a question upon which reasonable minds might differ, the propriety and necessity of such enactment was a matter of legislative determination."

Apparently said provisions were inserted in the judgment because of certain affirmative findings made by the trial court upon allegations contained in the complaint to the effect that plaintiff's property, on account of its location on a main thoroughfare of the city and its proximity to the municipal boundary of the city of Oakland, the presence of the two stores immediately across the street from her premises, the great volume of vehicular traffic passing in front and along

450

the side of her property, the noise caused thereby and by the presence of an electric substation in the same block, and the depreciated value of the property caused by its restricted use for residential purposes, was no longer suitable for residential purposes. But in this regard it may be stated that if the ordinance were free from creating the evil of a business monopoly, it may be seriously questioned as to whether or not any or all of the factors above mentioned, assuming them to exist, would be legally sufficient in and of themselves to render said ordinance void. (See the recent case of *Feraut* v. *City of Sacramento*, 204 Cal. 687 [269 Pac. 537], wherein most of the elements above mentioned are discussed, and many of the authorities relating thereto are summarized and applied.) In any event, the factors above mentioned tended to serve only as several of the many grounds upon which plaintiff sought to have the ordinance declared invalid and consequently unenforceable against her property; and since the trial court by its judgment has so decreed, and correctly so we believe, we think it had not the power to go beyond such adjudication and in effect decree that in whatever zoning ordinance the city might thereafter adopt plaintiff's property should be included within the business zone.

For the reasons stated it is ordered that paragraphs 1, 2, and 4 of the judgment be stricken therefrom, and as thus modified the judgment is affirmed, respondent to recover costs.

A petition for a rehearing of this cause was denied by the district court of appeal on February 27, 1929, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 28, 1929.