[S. F. No. 14008. In Bank.—August 19, 1930.]

JAMES M. WHEAT et al., Respondents, v. R. H. BARRETT, as Building Inspector, etc., Appellant.

Girard N. Richardson and Joseph C. Prior for Appellant.

Breed, Burpee & Robinson and Bestor Robinson for Respondents.

PRESTON, J.—In this cause, the opinion of Mr. Justice *pro tempore* Campbell, heretofore rendered by the Honorable District Court of Appeal for the First Appellate District, has our approval and is, with the exception of the last two paragraphs thereof, hereby adopted as the opinion of this court herein, as follows [(Cal. App.) 288 Pac. 1092]:

"This is an action to compel the Building Inspector of the City of Piedmont to issue a permit for the erection of a store building upon plaintiffs' property.

"Defendant's refusal to issue the permit was based upon the prohibitions contained in ordinance No. 268 of the city of Piedmont, commonly known as the 'Piedmont Zoning Ordinance,' which restrained the erection of store buildings except within the very restricted districts. The trial court held ordinance No. 268 void and ordered that a writ of mandate issue. Subsequent to this judgment by the trial court ordinance No. 268 was declared void by this court on the ground that it created a business monopoly. (*Wickham* v. *Becker*, 96 Cal. App. 443 [274 Pac. 397]), and in *Andrews* v. *City of Piedmont*, 100 Cal. App. 700 [281 Pac. 78], such ordinance was likewise held to be void on the authority of *Wickham* v. *Becker*, *supra*, and it is conceded by the parties here that such ordinance is of no force and effect.

"Subsequent to the entry of judgment the city of Piedmont passed ordinance No. 315, which prohibits the erection of a store building on plaintiffs' property. If the new ordinance is valid, it presents the question whether a writ of mandate should issue out of the lower court pursuant to the judgment as affirmed in *Wickham* v. *Becker*. Accordingly, under the broad powers recently granted to appellate tribunals in this state, this court permitted the introduction of evidence upon the passage of the new zoning ordinance to determine its validity and upon the question of whether plaintiffs—respondents herein—had secured a vested right in the permit required to be granted under the terms of the original judgment. The additional evidence is before the court in the form of a written stipulation appended to which is ordinance No. 315, adopted under authority of section 41 of the charter of the city of Piedmont, and the building contract entered into by Wheat and wife with Charles E. Bardwell for the erection of the store building.

"Section 41 of the charter of the city of Piedmont, as amended, is as follows: 'The City of Piedmont is hereby declared to be primarily a residential city and the Council shall have the power to adopt such zoning system within the city as may in its judgment be most beneficial, and in such zoning systems may prohibit the erection or maintenance of any class or classes of buildings within said areas, and may classify or reclassify the zones established, but no zone now existing shall be reduced or enlarged with respect to size

or area and no zones shall be reclassified without submitting the question to a vote of the electors held at a general election or a special election to be called for that purpose, and no zones shall be reduced or enlarged and no zones reclassified unless a majority of the voters voting upon same shall vote in favor thereof.'

"From the stipulated facts it appears that after judgment was entered and before a stay of execution was secured and prior to taking an appeal the peremptory writ of mandate was served upon appellant, and the permit fee required to be paid was tendered to him and upon such tender being refused respondents thereafter deposited the sum of money involved in accordance with section 1500 of the Civil Code; also, that prior to appellant taking the appeal respondents entered into a contract for the erection of the building, and the contractor commenced work under the contract and dug 610 feet of trench and erected 84 feet of forms for concrete— evidently for foundation purposes. The work was stopped by threat of arrest on the part of the Building Inspector. Finally the permit authorizing the erection of a $100,000 store building was deposited with the clerk of the superior court to abide the judgment on appeal.

"No point is made that ordinance No. 315 creates a monopoly, which was the decisive question in *Wickham* v. *Becker, supra,* the ordinance being attacked only on the ground that the council had no authority to pass it, and that to become effective it had to be adopted by a majority vote of the voters of the city. We do not agree with respondents in this contention, as it is obvious from a reading of section 41 of the Piedmont charter that the city council was within its rights and had authority to pass the ordinance, as ordinance No. 315 is a new ordinance and not an amendment to ordinance No. 268 nor any other ordinance. At the time ordinance No. 315 was passed the city of Piedmont had no zoning ordinance, the former ordinance having been adjudged to be void (*Wickham* v. *Becker, supra*), and the city council did not reduce nor enlarge zones then existing. The charter expressly provides that 'the Council shall have the power to adopt such zoning system within the city as may in its judgment be most beneficial . . . and may classify and reclassify the zones established, but *no zones now existing* shall be reduced or

enlarged with respect to size or area and no zones shall be reclassified without submitting the question to a vote of the electors,' etc. It will thus be noted that section 41 of the charter gives the city council jurisdiction to classify new zones, and that it is only when existing zones are to be reclassified or changed that the question of the propriety of such reclassification or change must be submitted to the vote of the electors. Ordinance No. 268, being adjudged void, was ineffective for all purposes as of January 28, 1929—the date of the decision in *Wickham* v. *Becker, supra* —and thereafter the city council had jurisdiction under section 41 of the charter of the city of Piedmont to adopt a new zoning ordinance, which it did when it adopted ordinance No. 315, and which was not an amendment to nor a reclassification of 'zones now existing.' 'A judgment on appeal like a judgment of a trial court has the force and effect of a judgment from the time of its entry.' (*Eaton* v. *Southern Pac. Co.*, 31 Cal. App. 379, 381 [160 Pac. 687, 688].)

"Respondents' claim that a vested right had been secured in the permit for the erection of the store building is answered in the following language from *Brougher* v. *Board of Public Works, etc.*, 205 Cal. 426, 432 [271 Pac. 487, 490] : 'It is held, however, in a number of well-considered cases that a Board of Public Works or a body exercising similar powers to those exercised by the Board of Public Works of the City and County of San Francisco, may cancel or revoke a permit issued by it when the ordinance under which the permit was issued had been amended in such a manner as to render the erection of the building covered by the permit objectionable and contrary to the terms of the ordinance as amended. This precise question was considered in the very recent case of *Brett* v. *Building Commr. of Brookline*, 250 Mass. 73 [145 N. E. 269, 271], wherein the court on page 79 of the opinion says: "The petitioners have no special and peculiar immunity arising from the fact that permits had been issued to them. They had begun work pursuant to those permits although such work had not progressed very far." It is true the court, as suggested by respondents, calls attention to the exception 'that a permit would not be revoked in those cases where the licensee had done something under the license from which

the mere privilege would ripen into a vested right,' but here, as in the Brett case, 'such work·had not progressed very far.'

"In the Brett case, cited with approval by our Supreme Court in the Brougher case, permits under the then-existing statutes and by-law were granted to petitioners ˙to erect two family dwelling houses on adjoining lots. Each petitioner made certain contracts˙ towards the construction of these houses and work thereon had actually begun. On one lot only some slight excavation had been done prior to the amendment of the by-law. On each of the other two lots the batter-boards had been erected and the engineering work of designating the lines of the houses and the height of the foundations had been done; on one of these some work of excavation had been done and on the other foundation trenches had been dug to the full depth and permits to pour cement for the foundations had been obtained, and yet the court held the erection of the buildings authorized by the permits would be a violation of the amendment to the zoning by-law effective after the issuance of the permits and dismissed the petitions for writ of *certiorari*. A similar situation is presented in *Salem* v. *Maynes,* 123 Mass. 372. In that case, before any ordinance on the subject was adopted, the defendants had begun work on the cellar, had made a contract for the erection of a proposed wooden building and had bought and prepared lumber to carry out the contract. Thereafter an ordinance was passed which defined the height of wooden buildings in that locality and the area and distance of such buildings from any other building. The proposed building of defendants did not comply with the ordinance. In a suit for the removal of the building plaintiff was granted a decree, the court using this language: 'All contracts between individuals, and even charters granted by the state, are subject to the exercise of this (the police) power. . . . The facts that, before the passage of the ordinance, the defendants had begun work on the cellar upon the site of the proposed building and had made a contract between themselves for the erection of the building and had bought and prepared lumber to carry out that contract, does not exempt them from the operation of the ordinance' (citing authorities).

"As much, if not more so in the present case, is the work done inconsequential in proportion to the total cost of construction, than in the cases cited, and therefore less reason upon which to base the claim of a vested right. While it is held in *Pelham View Apts.* v. *Switzer,* 130 Misc. Rep. 545 [224 N. Y. Supp. 56, 57], cited by respondents, that a vested right had been secured by reason of the building permit having been issued in that case, the facts there are not analogous to those in the present case. In that case, quoting from the facts stated in the opinion of the court, 'the petitioner purchased the real property in question, relying upon his right to the original permit issued to him to build a building, and that he paid a substantial sum of money on account of the purchase price for the same; that he thereafter employed the services of an architect, who prepared and caused to be filed plans for an apartment house building, for the building of which the original permit was issued; that relying upon this permit he paid additional sums on account of the purchase price, took title, and executed a purchase-money bond and mortgage. He thereafter incurred additional expense to have the land surveyed, so that the building might be properly placed thereon. That thereafter he proceeded to excavate the cellar, and paid for such excavation approximately $1,000.'

"From the foregoing statement of facts it appears that petitioner, relying upon his permit to build the building, purchased the property upon which to erect the building called for in the permit, paid the purchase price therefor in money and purchase-price bond and mortgage, and expended $1,000 in excavating the cellar and the expense of the services of the architect and in having the land surveyed. As we read the opinion of the court, the holding of a vested right in the permit was based on the fact that petitioner in good faith relied upon the permit in purchasing the property and incurring the expenses enumerated in the statement of facts. We do not think the wording of the opinion justifies respondents' conclusion as stated in his brief that 'the court held that where a permit had been secured and the owner had entered into contracts for the erection of the building, a subsequent zoning ordinance will not revoke the permit for the reason that a vested right had been secured.' The conclusion of respondents drawn from the opinion, if

correct, is against the weight of authority in other jurisdictions and is not the rule in this state (*Brougher* v. *Board of Public Works, etc., supra.*)"

*Shreveport* v. *Dickason,* 160 La. 563 [107 South. 427, 431], cited by respondents, was a case in which the vested right claimed was based upon a final judgment giving defendant the right to have a building permit issued to her whereas in the instant case the judgment had not become final, but was pending a decision upon this appeal. The court there said: "As we are presently concerned only with the asserted right of plaintiff to plead the ordinance in this case as authority for divesting the defendant of a valuable property right secured to her by a final judgment of this court, we feel that we may pretermit consideration of all other questions growing out of or pertaining thereto. . . . 'Matters once determined by a court of competent jurisdiction, if the judgment has become final, can never be called in question by the parties, or third persons. It matters not under what form the question be presented, whenever the same question recurs between the same parties the plea of *res adjudicata* estops.'"

The judgment is reversed.

Richards, J., Shenk, J., Waste, C. J., Seawell, J., Curtis, J., and Langdon, J., concurred.