HOWE REALTY CO. *v.* CITY OF NASHVILLE *et al.*

(*Nashville,* December Term, 1939.)

Opinion filed June 8, 1940.

Petition to rehear denied June 29, 1940.

Ferriss C. Bailey, of Nashville, for complainant.

W. C. Cherry, E. C. Yokley, Jr., John H. Lechleiter, and Chas. G. Blackard, all of Nashville, for defendants.

Mr. Justice McKinney delivered the opinion of the Court.

The Howe Realty Company, owner of real property located on the southeast corner of West End Avenue and Twenty-first Avenue in the city of Nashville, filed the bill herein on September 7, 1939, under the Uniform Declaratory Judgments Act, Sections 8835-8847 of the Code, attacking the validity of Ordinance No. 1257, introduced on July 31, 1939, passed by the Mayor and City Council of Nashville on third and final reading on August 15, 1939, and approved by the Mayor on August 21, 1939. By this enactment Ordinance No. 871, and its amendments dividing the city into zones, was amended so as to change the classification of complainant's property from "Commercial B District" to "Residence C District." The block on the south side of West End Avenue extending from Twentieth Avenue to Twenty-first Avenue under the original Zoning Ordinance No. 871, passed July 3, 1933, was classified as "Residence C District," but by an ordinance passed in 1937 its classification was changed to "Commercial B. District." The record does not disclose the history of this change. It appears that this is a solid block of residential property with the exception of one school and one church, there being no commercial or industrial enterprises within this area.

About the 28th day of June, 1939, the complainant entered into a lease contract with the Shell Oil Company for a portion of this property, subject to its approval of title upon submission by complainant of an abstract of title, and subject to the consent of the city for the erection and maintenance of a filling station thereon. Complainant was to remove the dwelling on the leased property, but the Shell Oil Company was to construct the filling station at its own expense. The lease agreement was finally concluded on July 31, 1939, and a contractor by the name of B. G. Dickey, Jr., on that day applied for and received from the assistant building supervisor a permit for the erection of a filling station on this property. It is inferable from the bill that the residents in that area were opposed to this commercial venture. We quote from the bill the following: ''During the afternoon of Monday, July 31st the Building Supervisor or his representative called an agent representing the complainant corporation and demanded a return of the building permit, but the return of the permit was refused as the agent of the complainant corporation did not have the permit which had been issued to the Shell Oil Company and complainant is advised that the Shell Oil Company refused to surrender the permit and work continued during the afternoon of Monday, July 31, 1939. On Tuesday afternoon, that is, August 1, 1939, Honorable John Lechleiter, a member of the City Council of the defendant corporation and an attorney representing a few property owners in the vicinity called the attorney for the complainant and stated that in order to avoid legal proceedings he was suggesting that a gentlemen's agreement be entered into by and between the attorney for the complainant and Mr. Lechleiter, representing a few property owners in the neighborhood and accordingly an agree-

ment was made and said agreement provided that work would be suspended without prejudice to the complainant and until the rights of the complainant could be determined. About the same time complainant's agents were advised that a City Ordinance would be introduced before the City Council on Monday night, July 31, 1939, which would attempt to amend the Zoning Law in so far as same applied to a certain limited area including the property in question.''

It is stated in the city's brief that the supervisor of buildings had been instructed by the legal department not to issue this permit, and that he was absent when the application was made and the permit inadvertently issued by his assistant, but that within two hours after it was issued the permit was canceled and its return demanded. These facts do not appear in the stipulation, but from the averments in the bill it does appear that on the same day the permit was issued its recall was demanded and refused. The bill recites that the permit was issued to the Shell Oil Company, who was to construct a filling station, while the permit was, in fact, issued to complainant, who had no intention of erecting such a structure. Since no question is made as to this incorrect statement in the bill, we will treat the complainant as the agent of the Shell Oil Company in procuring this permit.

The cause was heard upon the pleadings, exhibits, and stipulation of facts, but there is no evidence that either complainant or the Shell Oil Company expended any money, incurred any obligations, or did any work on this property after the permit was issued; so that we must conclude that the status of the parties was not changed as the result of the issuance of the permit. If the supervisor of buildings had authority to recall this permit, then under all the authorities complainant's property is

subject to Ordinance No. 1257. We think he had such authority. While the ordinance defining his powers and duties is not incorporated in the transcript, Ordinance No. 871 is part of the record, and Section 12 thereof provides, in part, as follows:

"The Board of Zoning Appeals shall have such duties and powers as are set forth in the various sections of this ordinance. The Board shall adopt such rules and regulations as it may deem necessary to carry into effect the provisions of this ordinance. It shall hear and decide all questions brought before it by appeal from the refusal, granting or revocation of permits by the Supervisor of Buildings under the provisions of this ordinance."

This is a clear recognition of the power of the supervisor of buildings to recall a permit and, impliedly, confers such authority upon him. This being true, upon the recall of the permit in question, the complainant's remedy, as provided in Section 12 of Ordinance No. 871, was to appeal to the Board of Zoning Appeals.

The general rule, supported by numerous decisions, is thus stated in 43 C. J., 349:

"As a general rule, a building permit has none of the elements of a contract and may be changed or entirely revoked, even though based on a valuable consideration, if it becomes necessary so to change or revoke it in the exercise of the public power. Applicant's property is not exempt from the operation of subsequent ordinances and regulations legally enacted by the corporation, as for instance, his property may be subject to an ordinance or regulations extending the fire limits. But when once the proper authorities grant a permit for the erection or alteration of a structure, after applicant has made contracts and incurred liabilities thereon, he acquires a kind of property right on which he is entitled to protection;

and under such circumstances it is generally held that the permit cannot be revoked without cause or in the absence of any public necessity for such action.''

Some of the leading cases supporting the foregoing text are *Brett* v. *Building Commissioner of Brookline,* 250 Mass., 73, 145 N. E., 269; *Des Moines* v. *Manhattan Oil Co.,* 103 Iowa, 1096, 184 N. W., 823, 188 N. W., 921, 23 A. L. R., 1322; *State* v. *Rendigs,* 98 Ohio St., 251, 120 N. E., 836; *City of Lansing* v. *Dawley,* 247 Mich., 394, 225 N. W., 500; *People ex rel. Publicity Leasing Co.* v. *Ludwig,* 218 N. Y., 540, 113 N. E., 532; *Wheat* v. *Barrett,* 210 Cal., 193, 290 P., 1033; *Kingshighway Presbyterian Church* v. *Sun Realty Co.,* 324 Mo., 510, 24 S. W. (2d), 108; *Geneva Investment Co.* v. *City of St. Louis, Mo.,* 8 Cir., 87 F. (2d), 83; *Standard Oil Co.* v. *City of Minneapolis,* 163 Minn., 418, 204 N. W., 165. In fact, we find no cases expressing a contrary view.

Mr. Metzenbaum in his work on The Law of Zoning, pages 284, 285, after referring to the fact that there is some conflict in the decisions, makes this statement:

''Furthermore, the question of the degree to which actual construction may have progressed under the permit, appears to play a very important part in the attitude of the courts, in determining the propriety and equitableness of sustaining a revocation of such a permit.''

It is with respect to the degree of construction that the courts differ. Perhaps the weight of authority supports the conclusions of the Supreme Court of Massachusetts in *Brett* v. *Building Commissioner of Brookline, supra,* in which Chief Justice Rugg says [250 Mass., 73, 145 N. E., 271]: ''Since the petitioners had only barely begun work pursuant to their permits, they had acquired no vested rights against a change in the by-law by the exercise of the law-making power.''

Some of the authorities say the permit cannot be recalled where a "substantial part" of the work of construction has been performed. It is unnecessary for us to determine in this cause the extent of construction necessary to constitute a vested right since there has been no construction.

Some of the cases also hold that the enactment of such an ordinance as the one under consideration impliedly revokes a permit where, pursuant thereto, the owner has incurred no liability.

 Ordinance No. 871, dividing the city into zones, was enacted by virtue of the authority vested in the city by Chapter 209, Private Acts of 1925. Counsel for complainant, in denying the right of the supervisor of buildings to recall the permit issued by his assistant, invokes the following provision in subsection 8 of Section 2 of said Act:

"Nothing in this Act shall be taken to prevent:

"(a) The erection of a building for which a permit shall have been issued previous to the passage of an ordinance under the provisions of this Act."

The learned chancellor held that "this provision has relation to permits issued before this amendment was enacted and before Ordiance No. 871 was adopted by the City Council of Nashville." Whether it does or not, a question we do not decide, it is apparent that this prohibition was inserted in the Act for the purpose of protecting vested rights, and has no relation to the power or authority of the supervisor of buildings to recall permits which he conceives were erroneously, inadvertently, or wrongfully issued. Having held that the supervisor of buildings had authority to recall this permit, and that the status of complainant was in no wise affected thereby, we conclude, as did the chancellor, that Ordinance No.

1257 is valid, and that complainant is subject to its provisions.

In many instances residential property owners could derive much larger incomes if they were permitted to devote same to commercial purposes. The right, however, to restrict such areas has become the law in this and practically every jurisdiction in the United States. While such regulations frequently result in financial loss to property owners, they are based upon the idea that "the interests of the individual are subordinate to the public good." *Des Moines* v. *Manhattan Oil Company, supra* [193 Iowa, 1096, 184 N. W., 823, 23 A. L. R., 1322]. It is not our province to pass upon the wisdom of such laws; that is the prerogative of the Legislature.

For the reasons stated, the decree of the chancellor is affirmed.

### On Petition to Rehear.

Upon the original consideration of this cause we examined every authority we could find in which the question before us was involved, and cited numerous cases holding that a building permit has none of the elements of a contract and may be changed or revoked any time before the party to whom it was issued has acquired a vested right thereunder.

Counsel have referred us to no authority taking a contrary view. There are numerous cases holding that a permit may be revoked where such an ordinance, as No. 1257, has been enacted subsequent to its issuance, provided the party to whom it is issued has incurred no liability or has not begun the construction of the improvement.

In the instant cause the building inspector not

only recalled or revoked the permit on the day that it was issued in anticipation of the passage of ordinance No. 1257, but he repeated the demand for its return after ordinance No. 1257 was passed. There is not a particle of evidence in the record that complainant entered into any contract, incurred any liability, or began the work of removing the dwelling at any time subsequent to the issuance of the permit. The bill avers that after receiving the permit complainant began wrecking the dwelling located on the property, but such recital is not evidence; and if any substantial change in the property had been effected, we must assume that complainant would have established that fact by testimony.

We did state in our original opinion that this was a residential area in which there are no industrial enterprises. While this is alleged in the answer, it is not sustained by any evidence. This is an immaterial matter since the right of the city to change the classification of this block is not involved, except in so far as it affects complainant as a result of the permit issued to it.

The petition to rehear is without merit and will, therefore, be denied.