[Civ. No. 13457.   First Dist., Div. Two.   June 18, 1948.]

SAFEWAY STORES, INCORPORATED (a Corporation), Appellant, v. CITY COUNCIL OF SAN MATEO et al., Respondents.

Hoffmann & Draper for Appellant.

Arthur J. Harzfeld for Respondents.

GOODELL, J.—The appellant owns a piece of property on the southwesterly corner of San Mateo Drive and Poplar Avenue in the city of San Mateo. It is within a fourth residential zone, wherein stores are not permitted. Appellant's application to respondent council for a reclassification of its property to commercial status was denied. A writ of mandate to compel the reclassification was then sought and denied, and this appeal was taken.

The central business district of San Mateo extends from El Camino Real on the west to and beyond the Southern Pacific on the east, a distance of about 5 blocks, and from the city park on the south to above Baldwin Avenue on the north, a distance of about 5 blocks. It is zoned commercial and its fringes, here and there, are similarly zoned. Commercial zoning also extends along El Camino Real, along the strip facing the railroad near the station, and along Bayshore Boulevard.

A large area south of the central business district, extending lengthwise for over three-quarters of a mile and about 2 blocks in width is residential in character, and a still larger area to the north, over three-quarters of a mile in length and 4 or 5 blocks in width, is residential in character, and by zoning as well with a few minor exceptions.

In 1937, the council adopted a zoning ordinance dividing the city into eight districts, namely, first, second, third and fourth residential; commercial; light industrial; heavy industrial, and unclassified. First residential districts are limited to single-family dwellings and public buildings, and their accessories, with churches allowable by permit. Second residential districts are limited to all uses permitted in the first, plus two-family dwellings or duplexes, and by permit community clubhouses. Third residential districts are limited to all uses permitted in the second, plus apartment houses. Fourth residential districts are limited to all uses permitted in the third, plus churches and railroad stations, with the following

allowable by permit: bungalow courts, clubs, court apartments, hospitals, philanthropic institutions, private schools, sanitariums, and gasoline service stations.

San Mateo Drive runs in a general northwesterly-southeasterly direction and approximately parallels El Camino Real, which is a few blocks to the west, and the Southern Pacific tracks, a few blocks to the east. It is a busy street, 60 feet wide, and carries a large volume of traffic, including an interurban electric railway, automobiles, buses, stages and truck in large numbers and at all hours. Excepting El Camino Real it is the only artery connecting San Mateo with Burlingame and the country to the north.

The zone within which appellant's property lies is a long, narrow strip extending for about 8 blocks northerly from the central business district. In width it extends about a half block easterly and a half block westerly of San Mateo Drive. Just above Poplar Avenue, Leadley Terrace, zoned as second residential, cuts into 1 block of its length and about a half block of its width.

Flanking this strip on the east is a long, narrow area of third residential extending to the railroad tracks, while flanking it on the west (except for 1 block zoned as third residential) is a long area of second residential extending almost to El Camino Real. Thus both sides of the fourth residential district are bounded by zones of higher rating.

Appellant contends that the zoning ordinance as applied to its property "is unreasonable and arbitary in that this property clearly is commercial in character" and that its change in character from residential to commercial has been brought about by "spot zoning." It claims that the "frequent and indiscriminate 'spot zoning' amendments of the ordinance established a clear administrative determination that any property on San Mateo Drive—except appellant's—is commercial, but they have completely and finally destroyed any boundary which may have existed between commercial and residential zones."

▮ Spot zoning is accomplished by the amendment of a general zoning ordinance (*Rubin* v. *Board of Directors,* 16 Cal.2d 119, 124 [104 P.2d 1041]). Appellant's arguments call for an examination (with this definition in mind) of the 10 "islands" which it claims have commercialized its property and the environs thereof. They include places away from the drive as well as places on it, and places outside the zone in

which appellant's property lies as well as within it, and are as follows:

1. A block north of appellant's property, and at the northwest corner of San Mateo Drive and Bellevue Avenue, there is a grocery store.

2. A block east of appellant's property, on Poplar Avenue, there is a florist shop and nursery.

Both establishments were there many years before the city was zoned and come within section 12 of the ordinance which provides that ''Any use forbidden by this ordinance but which is lawfully existing at the time this ordinance becomes effective, may be continued'' as a nonconforming use.

3. On Ellsworth Avenue between Santa Ines and Monte Diablo, over 2 blocks from appellant, there is another grocery store which presumably falls into the same category.

None of these properties was ''spot zoned'' and none comes under any variance provision. All three of them antedate all zoning, and the framers of the ordinance drew around them the boundary lines of what they defined as *residential districts* ''with the purpose of directing the present and future development of the city and no attempt was made to remold its past development'' (*Zahn* v. *Board of Public Works*, 195 Cal. 497, 512, 513 [234 P. 388]).

4. Directly across San Mateo Drive from appellant's property there is a gasoline service station.

5. A block south, on the northeast corner of San Mateo Drive and Santa Ines, there is another.

6. Three blocks west of appellant's property, at Poplar Avenue and El Camino Real, there is still another, in a fourth residential district.

The section of the ordinance defining fourth residential districts enumerates eight ''uses permitted with a permit from the City Council'' and one of them is ''Gasoline Service Stations.'' Obviously the framers of the ordinance considered that these stations belong in such a district and that they would not destroy its residential character, a decision clearly within their own province. Such stations require no amendment, consequently they are not spot zoned. (*Rubin* v. *Board of Directors, supra.*)

7. On the corner diagonally across from appellant's lot, in Leadley Terrace (which is second residential) there are two new professional offices, one a physician's, the other a dentist's. All the buildings in this terrace are of residential

type, and these offices come squarely within the provisions for variances and exceptions in any zone "in harmony with the general purpose and intent of the ordinance." Appellant concedes that these offices were not zoned but are under the permissive variance provision.

This brings us to two "islands" which are admittedly zoned as commercial.

8. One block north of appellant's property, at the southeast corner of San Mateo Drive and Bellevue, there is a group of professional offices. This might well have been brought under the permissive variance provision (for it is in the same category as the Leadley Terrace offices) but it was nevertheless zoned as commercial. However, the offices are situated in houses of residential appearance as shown by the photographs.

9. Three long blocks—almost a third of a mile—south of appellant's property, on the margin of the central business district and practically an extension of it, there are three new dental offices and a clinic, all rezoned as commercial. The southerly line of this property is but 200 feet north of said district, which is zoned solidly commercial, while the northerly line of the property is 1,700 feet southerly of appellant's site. The 3 blocks lying between, on the west side of the drive, *including the block within which appellant's property lies,* are residential in fact as well as by zoning, with no "island" therein except one church. The proximity of these new offices to the main business zone would seem to put it in an altogether different neighborhood from that surrounding appellant's property. The fact that, as testified by the chairman of the planning commission, it was deemed proper "after a great deal of study and debate" to alleviate a serious problem by locating *professional offices* on San Mateo Drive can hardly be used by appellant as an argument that it was the victim of discrimination as to its proposed *grocery store* 1,700 feet away.

10. Next to the gasoline service station at San Mateo Drive and Poplar is some kind of a structure called the San Mateo County frozen food locker. At the trial neither side attempted to describe its appearance or to show by whom it is operated, or whether it is merely a public utility for the accommodation of all residents or a private enterprise. All the record shows is that it is built on the lot next to the gasoline station. The record with respect to the gas station (par. 4 above) is not at all clear. It is susceptible of the view that it was zoned as commercial. One of appellant's maps shows that one lot was "zoned" prior to the adoption of the ordinance, and that the

next lot, on Poplar, was zoned commercial on January 15, 1940. Even if the gas station had been zoned to commercial, the fact remains that it is actually within the terms of a permitted use within a fourth residential district.

Appellant's assertion that " 'spot zoning' has run rampant, and resulted in a shotgun pattern of commercial activities about appellant's property" is not substantiated. Nor was spot zoning either frequent or indiscriminate. At most there are but three sites. One of them, a block from appellant, while technically zoned as commercial, is *actually* residential in appearance. Another across the street, while technically zoned as commercial, is *actually* within the terms of the ordinance for fourth residential. The third is 1,700 feet away from appellant and in an altogether different neighborhood.

This phase of the discussion would be incomplete without reference to a business district to the north of appellant's property. Three blocks north there is the Bowie Tract directly east of San Mateo Drive, and an area a block long and a half block wide directly west of it, all zoned as commercial. This area runs up to the Burlingame line. The Southern Pacific tracks curve westerly beside the Bowie Tract and the drive veers likewise, paralleling the tracks, and this area is exclusively commercial and industrial (with spur tracks serving it) and never has been anything else. It ends abruptly, however, at State Street on the west side of the drive and at Villa Terrace on the east side, and a distance of 1,500 feet separates it from appellant's property.

The record shows that many of the homes in the neighborhood in question are very old, some as old as 60 or 70 years; that their average age is about 30 years; that this neighborhood was one of the first subdivisions of the city; that there are about 10 vacant pieces of property in the 8 blocks along the drive from the business district north, indicating that new homes are not being built. It also shows that the traffic is extremely heavy, dangerous, and noisy along the drive. Poplar Avenue likewise carries heavy east-west traffic because it is the only street with an under-pass at the Southern Pacific tracks.

A protest against reclassification was filed, signed by 140 property owners.

While both the recommendation of the planning commission and the vote of the council were unanimous, there were

differences of opinion among the nearby property owners. Several testified that San Mateo Drive was commercial, while others, including the chairman of the planning commission and a councilman, testified that it was residential. These were but individual opinions. The physical and others facts were all before the court. Several maps were introduced; photographs of residences and of other property were introduced; moving pictures were shown. ▇ It was stipulated that the judge might view the territory, and he did so. His observations on such tour became evidence in the case (see authorities cited in *Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, at 348 [175 P.2d 542] ; see, also, 24 Cal.Jur. p. 921).

▇ It will be remembered that appellant's attack is not made on the zoning ordinance as a whole, but only as applied to its property. With respect to such an attack the court said in the Wilkins case, 29 Cal.2d 332, 338 : ''Where it is claimed that the ordinance is unreasonable as applied to plaintiff's property, or that a change in conditions has rendered application of the ordinance unreasonable, it is incumbent on plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as will justify it in concluding, as a matter of law, that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public, but he must show an abuse of discretion on the part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power. (See *Rehfeld* v. *City etc. of San Francisco,* 218 Cal. 83, 85, [21 P.2d 419].)''

▇ The trial court found that neither the appellant's site nor the surrounding property was commercial in character, and in announcing its decision said : ''The question of policy is one to be determined by the proper public officials of San Mateo and the Court should not substitute its judgment for that of those officials unless no other reasonable conclusion can be arrived at upon the facts and the evidence than that the action . . . was unreasonable and arbitrary. As the Court views the matter, the question is fairly debatable and the Court is not justified in overruling the decision of the City officials.''

This is substantially what the Supreme Court of the United States said in the Zahn case. In its opinion in the

Wilkins case, *supra,* our Supreme Court said at page 339: "In affirming the judgment of this court in *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], where the city council concluded that the public welfare would be promoted by restricting a certain district which included the plaintiff's property, the United States Supreme Court said, 'it is impossible for us to say that their conclusion in that respect was clearly arbitrary or unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question.' (*Zahn* v. *Board of Public Works,* 274 U.S. 325, 328 [47 S.Ct. 594, 71 L.Ed. 1074].)' "

In the instant case appellant, claiming that there already exist "islands" which commercialize its neighborhood and that it, too, is entitled to commercial zoning, seeks by this proceeding to compel an enlargement of the commercial zone. With respect to this the court in the Wilkins case says at page 341: "It is clearly within the discretion of the legislative body of the city to determine whether such an 'island' should be enlarged or not, and the mere fact that the owner may enjoy greater benefits, or that his property will be enhanced in value, if the size of the island is increased, *cannot entitle him to compel the allowance of such increase in size* [citations]." (Emphasis added.)

The appellant contends that "The trial court erred in refusing to admit evidence conclusively establishing gross discrimination against appellant in the administration of the zoning ordinance."

Three pieces of documentary evidence were offered and rejected. The first was a certified letter from the city clerk to appellant's counsel, quoting excerpts from the minutes on six zoning matters other than appellant's. Counsel stated to the court that it was offered "for the purpose of establishing that all applications for rezoning to commercial use on San Mateo Drive, except . . . two applications of Safeway Stores, have been granted . . . and that only the application of Safeway Stores has been denied." In rejecting it the court remarked that all this had been already proved or admitted. Appellant had introduced several maps showing graphically all ten sites which it claimed had been spot zoned (discussed

herein under pars. 1 to 10) and there had been other evidence respecting them. There was no error in the ruling. The minute entries added nothing to what was already before the court in much clearer shape and form. The fact that in each instance, save appellant's, the application was granted (either by rezoning, by permit, or under the variance provision) had already been proved for whatever it was worth.

■ Another document offered was an unauthenticated copy of minutes of the planning commission of May 28, 1936 and of the city council of June 1, 1936. This showed that in the "rezoning" of the property across from appellant for "establishing an oil station thereon" the chairman of the planning commission stated ". . . that if the owners of the opposite corner desired a similar rezoning that the board would grant it." It shows further that a Mr. McCurdy "spoke on behalf of Mr. Poss" saying: "Mr. Poss would assist any one to secure a similar permit for the opposite corner." In one place the document speaks of similar "rezoning," in another of a similar "permit." Either way, a similar change would mean one for another "oil station." The meetings were held a year before the present ordinance was enacted (the terms of the old ordinance were not before the court) and over five years before appellant bought its property. The planning commission was not the granting authority, hence the statement of its chairman could not bind the council, which was the granting authority, nor could such statement bind even a future planning commission. The offer of assistance by one citizen on behalf of another was of course binding on nobody. The document is equivocal as to whether the site was then being rezoned or a permit was being issued. We are satisfied there was no error in rejecting this unauthenticated, indefinite, inconclusive document.

■ The third document offered and rejected was the transcript of proceedings before the council on May 20, 1946, two evenings before the trial. The planning commission had recommended to the council that several properties on San Mateo Drive, zoned as commercial, should be restored to fourth residential status. The council by a three-to-one vote declined to do so. What the appellant sought to introduce were the statements of two members of the planning commission and a councilman. One said "it is going to become a commercial street, and we can't stop it," another said that "for us to say that we are going to keep that residential is just being

silly . . . because there is no question that it is going to be commercial.'' The court in rejecting the evidence remarked that ''If they want to testify here, that is a different matter.'' Obviously that would have afforded cross-examination as to whether they meant it was *now* commercial.

Appellant did not see fit to call any of them.

The council denied the recommendation. Appellant argues from this that it thereby reaffirmed the commercial character of San Mateo Drive. All it did was to refuse to disturb a decision or decisions theretofore made. Certainly the best available evidence would be the personal attendance at the trial of the officials who were quoted in the transcript, but, even so, their evidence would not have been relevant or material.

▇ Lastly the appellant contends that the evidence ''establishes that the ordinance, as applied to appellant's property, creates a monopoly for business already existing, and is therefore invalid.''

In the first place, among ''business already existing'' in San Mateo there were at the time of trial three of its own Safeway stores. It was then expected that one of its stores would have to be discontinued on the expiration of appellant's lease on November 30, 1946. Whether this came about does not appear.

Appellant cites two cases under this head, *In re White,* 195 Cal. 516, 520 [234 P. 396], and *Wickham* v. *Becker,* 96 Cal. App. 443, 447 [274 P. 397], neither of which is in point. The first is the Atherton case where there were but two zones, a residential district and an unrestricted district. Of an area of 2,500 acres in the city they left but 1 1/10 acres unrestricted which had a street frontage of but 436 feet and at the time of the enactment of the ordinance this small area was wholly occupied by a gasoline service station and a restaurant ''to the exclusion of other business.'' The case turned on the point that the ordinance had in effect granted a monopoly to the business establishments already located in the 1 1/10-acre area, and had prohibited all other business. It is clear that the two cases are not comparable.

The second is one of the Piedmont cases, where, at 96 Cal. App. 447, in following the Atherton case, the court says: ''The situation presented here, with respect to the creation of a business monopoly, is to all intents and purposes the same as the one existing there.''

The fact that the population of San Mateo would normally warrant more than five stores, as testified by appellant's manager, does not prove anything in the absence of a showing that the districts or zones in which stores may be operated have been so constricted (as in the Atherton and Piedmont cases) as to show an intent to shut out newcomers. Nothing like this appears. The municipality cannot be held responsible for economic conditions with which they have nothing to do which might prevent the appellant from securing desirable locations. In any event, it does not justify appellant in demanding (by mandamus) that this particular location be opened up for it.

The finding "That the commercial districts established . . . by said zoning ordinance were at said times sufficient to permit petitioner to acquire property at an equitable price elsewhere in said City for operation as a grocery store" is attacked by appellant as unsupported by the evidence.

This finding, in our opinion, may be disregarded. Whether there is discrimination in the operation of a zoning ordinance cannot be determined by the question whether property could be acquired at an equitable price. In such extreme instances as in the Atherton and Piedmont cases price might, combined with other circumstances, enter into the consideration, but there is nothing in the instant case to bring the factor of price into play. The present case is just another illustration of what has been said repeatedly in zoning cases, that "Every exercise of the police power is apt to affect adversely the property interest of somebody." (Wilkins case, 29 Cal.2d 332, 338 [175 P.2d 542].)

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1948. Carter, J., voted for a hearing.