[Crim. No. 1384.  Second Appellate District, Division Two.—January 12, 1927.]

In the Matter of the Application of LOUIS E. RUPPE et al. for a Writ of Habeas Corpus.

[1] CONSTITUTIONAL LAW — MORTUARIES — POLICE POWER.—Mortuaries are among those lawful and useful businesses which are proper subjects of regulation and control within the exercise of the police power of the state, and this includes the right to confine such businesses within certain territorial limits.

[2] ID.—REGULATION OF BUSINESSES — LEGISLATURE — COURTS.—While acts of the legislature regulating useful businesses and occupations through the exercise of the police power are not conclusive and the courts may always review them and inquire as to whether or not such enactments have any reasonable tendency to promote the proper objects for which the police power may be lawfully used, still such regulations made by a competent legislative authority will not be set aside as unnecessary, unjust, or unreasonable unless they be clearly so.

[3] ID.—LEGISLATIVE DISCRETION—POLICE POWER.—In such case, where the circumstances are such that there may have been a reasonable difference of opinion, the legislative discretion and decision will be upheld.

[4] ID.—MORTUARIES—ZONING ORDINANCE.—The fact that other property situated similarly to that where mortuaries are prohibited is permitted to be used for their maintenance will not justify

1. Restriction on location of business of undertaker, notes, 3 A. L. R. 966; 25 A. L. R. 764. See, also, 18 Cal. Jur. 859.

2. See 5 Cal. Jur. 712; 6 R. C. L. 241.

the court in holding a zoning ordinance unreasonable and discriminatory.

[5] MUNICIPAL CORPORATIONS—REGULATION OF MORTUARIES—VIOLATION OF ORDINANCE—HABEAS CORPUS—USE OF PUBLIC STREETS—EVIDENCE.—In this proceeding in *habeas corpus* involving an attack upon a city ordinance regulating districts within which undertaking establishments may be maintained, upon the ground that the ordinance is arbitrary and unreasonable in its territorial limitation to meet the present conditions existing in the city, it cannot be said that the use of the public streets is demanded, as a matter of public convenience, for the parking of vehicles while funeral services are being conducted, nor can it be held that either upon the property of the undertaking establishments or lots established as public automobile parks, or both, there is not ample space for such vehicles to stand, where no information is furnished as to the availability of spaces other than such as are occupied by the public streets for parking purposes, or as to even an approximation of the number of funeral services that are required to be conducted within the city daily, or as to the time that is needed for such services, except that more than forty-five minutes is required for each.

[6] ID.—AREA ALLOWED FOR MAINTENANCE OF MORTUARIES—EVIDENCE. In such proceeding, petitioners' argument that two-fifths of one per cent of the area of the city is insufficient for the maintenance of undertaking establishments is not so manifest and indisputable that without certain information pertaining to parking of vehicles and time needed for funeral services it can be ruled that reasonable minds might not differ and entertain an opposite view to that maintained by the petitioners.

[7] ID.—SITUS OF PETITIONERS' MORTUARY—EFFECT ON VALIDITY OF ORDINANCE.—In such proceeding, the fact that petitioners' establishment is in an outlying section one and one-half miles from the nearest district where mortuaries are permitted does not have the effect of invalidating the ordinance, where it cannot be said that it has no "reasonable tendency" to promote those objects, which are within the undoubted realm of the police power.

[8] ID.—ACQUIESCENCE OF CITY IN CONSTRUCTION OF BUILDING—EVIDENCE.—In such proceeding, the petitioners are not in a position to say that the municipal legislative body acquiesced in the institution of an unlawful enterprise, or that the petitioners were lulled into the investment of their capital, and by a change of

5. *Habeas corpus* to test constitutionality of ordinance, note, 2 A. L. R. 1054.

7. Validity of ordinance in relation to undertakers or embalmers, note, 23 A. L. R. 71.

front deprived of property without compensation, where it appears that the petitioners received a permit from the building department of the city to construct an · undertaking establishment outside of the district created by the ordinance and that they expended a certain sum of money in constructing said building for an undertaking business, and that they were notified by various property owners prior to the commencement of their building operations that an undertaking establishment could not lawfully be conducted at that site, and the city council were never petitioned for the extension of an existing district, or the creation of a new one, embracing the property in controversy, whereas the owners of nearly all of the property affected protested against such action.

[9] ID.—ORDINANCES—REPEAL—INTENT.—In such proceeding, petitioners' contention that the ordinance in question has been repealed by the provisions of a general zoning ordinance cannot be sustained, where from an inspection of the latter ordinance it is clear that it was not intended to repeal or modify other ordinances dealing with the subjects regulated by it, except in certain instances, by further restricting the businesses or occupations involved.

[10] ID.—POPULATION OF CITY—SUFFICIENCY OF AREA FOR MORTUARIES. In such proceeding, it does not result from the mere fact that almost a half million more people reside in the city than did when the ordinance was enacted that the provisions made by it for undertaking establishments is inadequate, nor does it follow, as argued by petitioners, that if the spot zones attempted to be provided for undertaking establishments be subtracted from the total area in which such businesses are allowed, on the assumption that such zones are unlawful, the mortuary requirements of the city would be insufficient.

[11] ID.—TRANSPORTATION OF DEAD BODIES — FINDING — PUBLIC WELFARE.—In such proceeding, a finding made by a referee appointed by the court to the effect that "there is a certain risk involved in transporting the bodies of parties who have died of contagious diseases through the streets of the city, commensurate to the greater or less distances over which such bodies are transported, but that such danger is decreased by sanitary methods of handling," does not justify the holding that the ordinance in question is against the public welfare.

[12] ID.—HOSPITALS AND SANITARIUMS—MORTUARIES—CLASSIFICATION —CONSTITUTIONAL LAW. — Conditions necessarily existing in and about mortuaries, as well as their character, are intrinsically sufficiently different from those of hospitals and sanitariums as to permit their separate classification, and the fact that hospitals and sanitariums may be permitted outside of the districts zoned

for undertaking establishments does not render the inhibitions of an ordinance zoning districts for mortuaries unconstitutional on the ground of discrimination.

(1) 43 C. J., p. 340, n. 29, 30, p. 343, n. 55, p. 439, n. 72, 73.  (2) 12 C. J., p. 795, n. 33; 43 C. J., p. 342, n. 34.  (3) 12 C. J., p. 788, n. 1.  (4) 12 C. J., p. 762, n. 63 New; 43 C. J., p. 343, n. 57.  (5) 43 C. J., p. 343, n. 50.  (6) 43 C. J., p. 311, n. 98.  (7) 43 C. J., p. 336, n. 80, p. 343, n. 55.  (8) 43 C. J., p. 343, n. 52 New, p. 556, n. 59 New.  (9) 43 C. J., p. 565, n. 25 New.  (10) 43 C. J., p. 343, n. 50.  (11) 43 C. J., p. 336, n. 80.  (12) 43 C. J., p. 336, n. 80.

PROCEEDING in Habeas Corpus to secure release from custody for violation of ordinance regulating districts for. mortuaries.

The facts are stated in the opinion of the court.

W. T. Kendrick and W. T. Kendrick, Jr., for Petitioners.

J. M. Friedlander, City Prosecutor, Ray E. Nimmo and E. E. Leighton for Respondent.

CRAIG, J.—The petitioners, by this proceeding in *habeas corpus*, seek their discharge from the custody of the chief of police of the city of Los Angeles, by whom they are alleged to have been detained under a commitment issued out of the police court of said city upon conviction of having violated Ordinance No. 31,746 (New Series) of said municipality, and particularly that provision thereof regulating .districts within which undertaking establishments may be maintained.  A referee was appointed by this court to take testimony and make findings upon certain issues of fact.

It is contended that the ordinance under which the petitioners were prosecuted and convicted is class legislation, discriminatory, oppressive, and against public policy; that it is ancient, and insufficient in its territorial limitation to meet the present reasonable necessities of a growing metropolis, and for these reasons we are asked to declare it unconstitutional and void.

It is conceded that the petitioners established, conducted, and maintained a chapel and undertaking establishment outside of any district created by the municipal legislative body

of the city. The essence of the petitioners' complaint is that no new undertaking district has been created, or existing district so extended, as to include the area occupied by their chapel and establishment, and that the city council arbitrarily refuses to enact remedial legislation, notwithstanding the demands of constantly increasing commercial and residential growth in that vicinity.

At the time *Brown* v. *City of Los Angeles,* 183 Cal. 783 [192 Pac. 716], was decided in October, 1920, the ordinance here in question was upheld against attack upon the same general constitutional grounds as are relied upon by the petitioners here. Under the authority of that decision this petition must be denied unless conditions within the city of Los Angeles are shown to have been vitally altered since it was rendered, or unless these petitioners' undertaking establishment is so differently situated from that involved in the Brown case as to render the ordinance in question arbitrary, unreasonable, and discriminatory as to the establishment of these petitioners' business, although it was not so as to that of Brown.

Comparing the facts as they are found to be in our referee's report with those described in that decision, it may fairly be said that the conditions then and now differ materially only in the following particulars: The population of Los Angeles is nearly one hundred per cent greater now than in 1920, and hence it may be assumed that the need for mortuaries has been about doubled since then; there is in effect another ordinance of the city which prohibits the parking of automobiles for more than forty-five minutes upon streets in the business district, of which about forty per cent of district No. 1 is a portion; the petitioners' establishment is in an outlying section one and one-half miles from any district where mortuaries are permitted, whereas the Brown undertaking parlors were only about 150 feet from the southern boundary line of district No. 1.

Certain legal principles well established and applicable to the issues here presented are: [1] That mortuaries are among those lawful and useful businesses which are proper subjects of regulation and control within the exercise of the police power of the state, and this includes the right to confine such businesses within certain territorial limits. (*Brown* v. *City of Los Angeles, supra.*)

[2] While acts of the legislature regulating useful businesses and occupations through the exercise of the police power are not conclusive and the courts may always review them and inquire as to whether or not such enactments have any reasonable tendency to promote the proper objects for which the police power may be lawfully used, still, such regulations made by a competent legislative authority will not be set aside as unnecessary, unjust or unreasonable unless they be clearly so. (*In re Miller*, 162 Cal. 687 [124 Pac. 427]; *Stockton* v. *Stockton*, 41 Cal. 147; *Ex parte Tuttle*, 91 Cal. 589 [27 Pac. 933]; *In re Spencer*, 149 Cal. 396 [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]; *In re King*, 157 Cal. 161 [106 Pac. 578]; *Jardine* v. *City of Pasadena*, 199 Cal. 64 [48 A. L. R. 509, 248 Pac. 225].)

[3] In such case, where the circumstances are such that there may have been a reasonable difference of opinion, the legislative discretion and decision will be upheld. (*Ex parte Hadacheck*, 165 Cal. 416 [L. R. A. 1916B, 1248, 132 Pac. 584]; *Miller* v. *Board of Public Works*, 195 Cal. 497 [38 A. L. R. 1479, 234 Pac. 381].)

[4] The fact that other property situated similarly to that where mortuaries are prohibited is permitted to be used for their maintenance will not justify the court in holding a zoning ordinance unreasonable and discriminatory. (*Brown* v. *City of Los Angeles, supra.*) By the same decision it is also declared that the fact that "spot zones" are illegally established by the ordinance in question furnishes no ground for attack upon the prohibitory provisions of the ordinance establishing a district of considerable area and limiting funeral establishments thereto, if the ordinance is not otherwise unreasonable and discriminatory. Also that the constitutionality or unconstitutionality of a law upon the grounds on which petitioners predicate their claim for release is decidedly a question of its application, not to the public in general, but to them, circumstanced as they are and related as they have caused themselves to be to society and its fair public regulations.

The referee found that by Ordinance No. 31,746 (New Series) of the city of Los Angeles the maintenance of any "undertaking chapel, morgue or undertaking establishment" is prohibited outside of undertaking districts designated in said ordinance; that the principal district therein

designated permitting such establishments is named district
No. 1, and the total amount of street frontage in that dis-
trict is 250,000 feet; that there are thirty-five undertaking
establishments within district No. 1, whose combined front-
age is 2,625 feet; that this district is centrally located with
respect to the main cemeteries in and around the city of
Los Angeles; that said undertaking district comprises about
two-fifths of one per cent of the total area of the city; also
that more than forty-five minutes is required to properly
conduct a funeral service, and that by Ordinance No. 50,515
(New Series) the parking of vehicles is limited to forty-five
minutes within certain districts, which last-named ordinance
is applicable to about 100,000 feet of the frontage in dis-
trict No. 1.  We are not informed as to the availability of
spaces other than such as are occupied by the public streets
for parking purposes, nor as to even an approximation of
the number of funeral services that are required to be con-
ducted within the city of Los Angeles daily, nor the time
that is needed for such services, except that more than forty-
five minutes is required for each.

[5]  Under these circumstances we are unable to say that
the use of the public streets is demanded, as a matter of
public convenience, for the parking of vehicles while funeral
services are being conducted.  We cannot hold that either
upon the property of the undertaking establishments or lots
established as public automobile parks, or both, there is not
ample space for such vehicles to stand. [6] However
plausible may be petitioners' argument that two-fifths of
one per cent of the area of the city is insufficient for the
maintenance of undertaking establishments, if this be a fact,
it is not so manifest and indisputable that without the infor-
mation above mentioned as being absent from the record we
can rule that reasonable minds might not differ and enter-
tain an opposite view to that maintained by the petitioners.
Therefore, we are not authorized to declare the ordinance
void as applied to them as they conduct their undertaking
business.  It may be added that it seems apparent that the
showing upon the point just mentioned would of necessity
need to be extreme and the conditions established unusual
to warrant a judicial declaration that the business of the
undertaker is of such a nature as to entitle it to the exclu-
sive use of the public streets for a considerable portion of

the day, or that the area here allotted to such businesses, being approximately two square miles, and 150,000 feet of street frontage (as to which the forty-five minute parking limit does not apply), is not adequate for the funeral needs of a city of the present population of the city of Los Angeles.

[7]    What has been said applies equally in principle to petitioners' claim that since the section of the city in which their establishment is located is one and a half miles from the nearest legalized mortuary in a spot zone and a greater distance from district No. 1, a public need exists for the petitioners' undertaking parlors and that to prevent its maintenance is an unjust discrimination against the people of that neighborhood. Neither the need of this district nor the truth of the assertion that such need as exists is not supplied is clearly apparent from the facts found by the referee, or otherwise known or established. As was said in *Miller* v. *Board of Public Works, supra,* we are required to determine whether the zoning ordinance here in question has "any reasonable tendency" to promote public health, etc. While we may doubt that the provision made for the maintenance of such businesses as that of the petitioners is the most desirable that could be devised or that the same may not be subject to possible criticism as to its complete efficacy in accomplishing its apparent and asserted purposes, still we are unable to say that it has no "reasonable tendency" to promote those objects, which are within the undoubted realm of the police power.

As pointed out, the referee found that there is no material difference between the locality in which petitioners maintain their establishment and a number of districts or "spot zones" designated by Ordinance No. 31,746 (New Series) as territory in which such business may lawfully be maintained; but, as we have seen, from this fact it cannot be said that the prohibition of the ordinance of which complaint is made is unconstitutional.

It appears from the record, and the referee found, that petitioners made application to the building department for a permit to construct an undertaking establishment at the corner of Forty-fifth Street and Western Avenue, and that such permit was granted; and, further, that they did so erect a building and fit it for undertaking. Petitioners

allege, and the referee also found, that they expended a sum in excess of $35,000 in constructing and equipping said building for the business contemplated, and that such establishment constitutes the property involved in this proceeding.

[8] It is asserted by the petitioners that since the city authorities thus acquiesced in the creation of such business, and the expenditure of a large sum of money therefor, to now prohibit its peaceful operation is equivalent to a change of attitude resulting in the confiscation of their property. To the respondent's return herein, however, is appended as an exhibit an alleged full, true, and correct copy of a notice signed by various property owners, which the respondent avers was served upon petitioners prior to the commencement of their building operations. By such notice it appears that the prospective builders were informed that an undertaking establishment could not lawfully be conducted at the site mentioned, and that "this notice will also serve to preclude the possibility of any assertion by you hereafter that your property interests are invaded, impaired, or destroyed by the operation of the ordinance." In this notice it was further stated that previously to its service "a petition, signed by approximately 100% of the frontage affected was delivered to the city council, asking that the counsel refrain from creating a zone within which such business could be maintained in the locality mentioned." None of these allegations or findings are disputed.

It cannot successfully be urged that the building department had authority to do more than sanction the erection of petitioners' building. The city council were never petitioned for the extension of an existing district, or the creation of a new one, embracing the corner in controversy, whereas the owners of nearly all of the property affected protested against such action. Hence, we think the petitioners are not in a position to say that the municipal legislative body acquiesced in the institution of an unlawful enterprise, or that the petitioners were lulled into the investment of their capital, and by a change of front were deprived of property without compensation.

[9] It appears that subsequently to the adoption of Ordinance No. 31,746 (New Series) there was enacted Ordinance No. 42,666 (New Series), known as the general zoning ordinance, which established a district designated

as zone "C," in which, among other businesses permitted, are undertaking establishments. Petitioners seriously argue that Ordinance No. 31,746 (New Series) has been repealed as far as it may conflict with the regulations of the provisions of the other ordinance in their relation to zone "C." Because of the plain declarations contained in Ordinance No. 42,666 (New Series) to the contrary, we are unable to agree with this contention. From an inspection of the last-named ordinance we think it clear that it was not intended to repeal or modify other ordinances dealing with the subjects regulated by it, except in certain instances by further restricting the businesses or occupations involved. Section 10 of the general ordinance provides as follows:

"Except as hereinafter specifically provided, it is not intended by this ordinance to modify, abrogate or repeal, any ordinances, rules, regulations or permits previously adopted or issued pursuant to law, relating to the use, management or conduct of buildings, structures, improvements or premises; provided, however, that where this ordinance imposes a greater restriction upon the erection, establishment, alteration or enlargement of buildings than is imposed or required by such ordinances, rules, regulations or permits, the provisions of this ordinance shall control."

Section 15, entitled "Interpretation—Purpose," is a declaration practically in the same language as that just quoted from section 10.

[10] It does not result from the mere fact that almost a half million more people reside in the city of Los Angeles to-day than did when Ordinance No. 31,746 (New Series) was enacted that the provision made by it for undertaking establishments is now inadequate. This court cannot say, because we have no evidence before us to prove such a statement, that the city council did not foresee the city's growth and make ample provision for the additional population that has come. It may fairly be assumed that future increase in the number of people living within the municipality was anticipated by the legislators and provision intentionally made for the same. Further, therefore, it does not follow, as argued by the petitioners, that if the spot zones attempted to be provided for undertaking establishments be subtracted from the total area in which such businesses are allowed, on the assumption that such zones

are unlawful, the mortuary requirements of the city would be insufficient.

It is said that the statements contained in the general zoning ordinances to the effect that at that time the city planning commission had not been able to make a comprehensive survey of all portions of the city and that the portions covered by that ordinance and the maps thereto attached were then subject to regulation because "the necessity therefor in these particular districts is most urgent," amount to a confession that the ordinance was even then insufficient to meet the necessities of the city. We do not so construe this language. "The necessities of the city," as the matter must be regarded by those performing the task of zoning, involves not merely consideration of the area required for each regulated business, but also the exclusion of such businesses from those localities where their presence would be obnoxious to public health, convenience, etc. It may well be that a given business might be permitted in a much larger territory than that required to accommodate the community in so far as supplying it with the advantages derived from that business is concerned. It is quite probable that the necessity to which reference is made in the ordinance which is said to be urgent is not that the neighborhood may not be deprived of such supply, but rather that the portions of the city to which the businesses in question would prove detrimental should be protected therefrom.

[11] Our attention is called to a finding of the referee that "there is a certain risk involved in transporting the bodies of parties who have died of contagious diseases through the streets of the city, commensurate to the greater or less distances over which such bodies are transported. . . . But that such danger is decreased by sanitary methods of handling." It is asserted that this finding clearly shows that the ordinance is against the public welfare. It seems apparent that this court, having no more definite information than that "a certain risk" results from the transportation of bodies of deceased persons, is in no position to review the judgment of the legislators whose members are presumed to have had full opportunity for complete knowledge upon the subject. Of how great a risk is such "certain risk"? and just how much of a "certain risk" remains

when it has been "decreased by sanitary methods of handling"? It seems obvious that any decision of this court in the premises would be random guesswork, based upon speculation, and nothing more. Such considerations are peculiarly within the scope of the law-making branch of the government.

[12] Finally, we are of the opinion that the conditions necessarily existing in and about mortuaries, as well as their character, are intrinsically sufficiently different from those of hospitals and sanitariums as to permit of their separate classification. Hence, the fact, if it be one, that Ordinance No. 31,746 (New Series) and Ordinance No. 42,666 (New Series), together permit the latter businesses in zone "C" even outside of the districts zoned for undertaking establishments does not render the inhibitions of the former ordinance unconstitutional on the ground of discrimination as between these businesses and funeral establishments.

The facts of the instant proceeding do not bring it within the class of cases illustrated by *In re Dart*, 172 Cal. 47 [Ann. Cas. 1917D, 1127, L. R. A. 1916D, 900, 155 Pac. 63], where ordinances have been held void because, while assuming to regulate businesses, they have in fact suppressed them. Nor is this situation comparable to those where enactments clearly appear to have been discriminatory in their inception and design, as was the case in *Dobbs* v. *Los Angeles*, 195 U. S. 223 [49 L. Ed. 169, 25 Sup. Ct. Rep. 18, see, also, Rose's U. S. Notes]. In this proceeding a very considerable area is designated in which undertaking establishments may be conducted, and it is not even suggested that the ordinances here in question are tainted with inceptive intentional discrimination.

The writ is discharged and the petitioners remanded.

Works, P. J., and Thompson, J., concurred.