[L. A. No. 19148. In Bank. Dec. 3, 1946.]

A. L. WILKINS, Respondent, v. CITY OF SAN BERNARDINO et al., Appellants.

H. R. Griffin and Martin J. Coughlin for Appellants.

E. John Eriksson and Homer M. Bail for Respondent.

GIBSON, C. J.—Plaintiff sought declaratory relief, claiming that the zoning ordinance of the city of San Bernardino was unreasonable and invalid as applied to the west 112 feet of his property because that portion was placed in a single family dwelling zone. The remainder of this property is located in a small or "spot" business zone which is in the center of a large residential district, zoned for single family dwellings. Plaintiff, in substance, is attempting to obtain an extension of one arm of this small business zone by judicial decree, contrary to the legislative determination by which the boundaries of the zone were established. The defendants appeal from a judgment sustaining plaintiff's claims and enjoining enforcement of the ordinance as it affects the property in question.

The accompanying map, page 336, has been prepared in order that the facts may be more readily understood. It is based on the city zoning map, exhibit "C," with the addition of certain markings, such as lot numbers and lines to indicate the boundaries of the lots. The property involved in this case is the west 112 feet of lots 69 and 70 in the block bounded by Acacia Street on the west, by 33d Street on the north, by E Street on the east and by Marshall Boulevard on the south. This block was originally divided into lots 50 feet wide, each of which ran the length of the block (about 394 feet) from Acacia Street on the west to E Street on the east. Starting on the southerly side, the first four lots are numbered 72, 71, 70 and 69. Plaintiff owns the whole of lots 69 and 70, and the

easterly portion of lots 71 and 72, as well as other property bordering on the intersection of Marshall Boulevard and E Street. The portions of lots 71 and 72 owned by plaintiff, and all of lots 69 and 70 except the westerly 112 feet, were zoned for business. Plaintiff had constructed a business building on his portion of lots 71 and 72, and had erected multiple dwellings and garages on the middle portions of lots 69 and 70 (east of the disputed westerly 112 feet).

According to the record there are only three other sections in the immediate vicinity (each being but a fraction of a block) which are zoned to permit multiple dwellings. Plaintiff's lots adjoin an area at the intersection of Marshall Boulevard and E Street which is ''spot'' zoned to permit business uses, but on the other three sides all contiguous property is zoned as residential; and, except as noted, all the surrounding property for a number of blocks is likewise zoned for and exclusively devoted to single family dwellings. (See map, p. 336.)

In April, 1942, after two applications for rezoning had been denied as to the westerly 112 feet, plaintiff applied for a building permit for multiple dwellings on this property, and this application was also denied because the property was not zoned for such structures. In June, 1942, he applied for and obtained permits to erect *single family* two-story dwellings and garages on the west 112 feet of these lots. The plans submitted with the applications showed *single family* dwellings, but instead of following the plans he erected two *multiple* family units, each with an apartment and garages on the first floor and two apartments on the second floor. This action was admittedly in violation of the building permits and the zoning ordinance, and it clearly appears that the violations were deliberate and willful.

The trial court made a number of findings, some more in the nature of conclusions of law, to the effect that the use of the buildings for multiple dwelling purposes is in the enjoyment of a substantial property right of plaintiff; that such a use is not detrimental to health, safety, morals or welfare; that such use does not impede, hinder or interfere with the attainment of the objectives of the zoning ordinance; that the four apartments are so placed and erected that they are more adaptable and more useful for multiple dwelling purposes than for single family dwellings in that they adjoin other property now used for business and commercial purposes; that the enforcement of the ordinance would be an op-

PORTION OF THE CITY OF SAN BERNARDINO
AS OF JUNE 1943

LEGEND

SINGLE FAMILY RESIDENCE

BUSINESS

CONDITIONAL EXCEPTION - MULTIPLE DWELLINGS

SCALE IN FEET

pressive, confiscatory and unreasonable restriction on plaintiff's property rights; that multiple dwelling status appears to exist on both sides of Marshall Boulevard between Acacia and F Streets; that on Marshall Boulevard between Acacia and E Streets (lots 71 and 72) there are four frontages, each

occupying less than the 5,000 square feet required by another ordinance for single family dwellings; that it is impracticable to maintain and limit the use of the westerly 112 feet of lots 69 and 70 to a single family classification; that no consideration of public health, peace, morals, safety or welfare requires that plaintiff be prohibited from using the structures as multiple dwellings; that the apartment buildings upon the middle portion of lots 69 and 70 are unsightly and no ornament to that locality; that the extension of those buildings upon the west 112 feet of those lots presents a decided improvement in the general view from the Acacia Street side; that the land values have increased because of the development of a community business center; and that there is a shortage of housing facilities in the city.

The defendants contend that the findings do not support the judgment and are not supported by the evidence; that the existence of adjoining business property does not invalidate the zoning ordinance; that the presence of near-by boulevards and nonconforming uses is immaterial, as is the existence of a housing shortage in the city; that plaintiff cannot claim any rights based on his violation of the ordinance, and hence cannot claim that it is impracticable to use the buildings as single family dwellings; that every intendment is in favor of the constitutionality of zoning ordinances; and that there is no oppressive, confiscatory or unreasonable restriction on plaintiff's property rights. The plaintiff claims that the judgment is amply supported by the findings; that the sufficiency of the evidence cannot be questioned in view of the facts that the trial judge viewed the premises and that this constitutes additional and independent evidence; that whether or not the property has become unsuitable and impracticable for use for single family dwellings presents a question of law for the court; and that judicial notice may be taken of changing conditions and matters of common knowledge in the city, such as the shortage of housing facilities.

It is well settled that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power, and that the establishment, as part of a comprehensive and systematic plan, of districts devoted to strictly private residences or single family dwellings, from which are excluded business or multiple dwelling structures, is a legitimate exercise of the police power. (See *Jones* v. *City of Los Angeles*, 211 Cal. 304, 307 [295 P.

14]; *Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479].)

In the present case, there is no contention that the zoning ordinance as a whole is invalid, but only that its application to part of plaintiff's property is unreasonable, and hence we must assume, in accordance with the rule that every intendment is in favor of the validity of such ordinances, that the enactment as a whole is a proper exercise of the police power and adapted to promote the public health, safety, morals and general welfare. This being so, the sole question is whether the application of the ordinance to plaintiff's property is so oppressive and unreasonable as to justify the granting of relief, or whether there was any reasonable justification for the legislation as applied to plaintiff's property so as to make the action of the city, in denying plaintiff's applications for rezoning, a legitimate exercise of the police power. ■ A city cannot unfairly discriminate against a particular parcel of land, and the courts may properly inquire as to whether the scheme of classification has been applied fairly and impartially in each instance. (*Reynolds* v. *Barrett,* 12 Cal.2d 244, 251 [83 P.2d 29].) But the mere fact that some hardship is experienced is not material, since ''Every exercise of the police power is apt to affect adversely the property interest of somebody.'' (*Zahn* v. *Board of Public Works,* 195 Cal. 497, 512 [234 P. 388].) It is implicit in the theory of police power that an individual cannot complain of incidental injury, if the power is exercised for proper purposes of public health, safety, morals and general welfare, and if there is no arbitrary and unreasonable application in the particular case.

■ Where it is claimed that the ordinance is unreasonable as applied to plaintiff's property, or that a change in conditions has rendered application of the ordinance unreasonable, it is incumbent on plaintiff to produce sufficient evidence from which the court can make such findings as to the physical facts involved as will justify it in concluding, as a matter of law, that the ordinance is unreasonable and invalid. It is not sufficient for him to show that it will be more profitable to him to make other use of his property, or that such other use will not cause injury to the public, but he must show an abuse of discretion on the part of the zoning authorities and that there has been an unreasonable and unwarranted exercise of the police power. (See *Rehfeld* v. *City etc. of San Francisco,* 218 Cal. 83, 85 [21 P.2d 419].) ■ Every intendment is

in favor of the validity of the exercise of police power, and, even though a court might differ from the determination of the legislative body, if there is a reasonable basis for the belief that the establishment of a strictly residential district has substantial relation to the public health, safety, morals or general welfare, the zoning measure will be deemed to be within the purview of the police power. (*Acker* v. *Baldwin,* 18 Cal.2d 341, 344 [115 P.2d 455] ; *Miller* v. *Board of Public Works,* 195 Cal. 477, 490 [234 P. 381, 38 A.L.R. 1479] ; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388] ; see *Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605, 614 [126 P.2d 954].)

In affirming the judgment of this court in *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], where the city council concluded that the public welfare would be promoted by restricting a certain district which included the plaintiff's property, the United States Supreme Court said, "it is impossible for us to say that their conclusion in that respect was clearly arbitrary or unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question." (*Zahn* v. *Board of Public Works,* 274 U.S. 325, 328 [47 S.Ct. 594, 71 L.Ed. 1074].)

The courts cannot write the zoning laws and cannot say that the legislative body has erred in drawing the lines of the districts, or in restricting the territory devoted to business or to multiple dwellings, unless there is a clear showing of abuse of legislative discretion, i. e., that the restrictions are unreasonable. As stated in *Miller* v. *Board of Public Works,* 195 Cal. 477, 493, 495 [234 P. 381, 38 A.L.R. 1479], "The man who is seeking to establish a permanent home would not deliberately choose to build next to an apartment house, and it is common experience that the man who has already built is dissatisfied with his home location and desires a change. . . . Somewhere the line of demarcation must be drawn, and it is primarily the province of the municipal body to which the zoning function is committed to draw that line of demarcation, and it is neither the province nor the duty of courts to interfere with the discretion with which such bodies are invested in the absence of a clear showing of an

abuse of that discretion. In short, as previously indicated, we are not permitted to substitute our judgment for the legislative judgment.''

An examination of the California decisions discloses that the cases in which zoning ordinances have been held invalid and unreasonable as applied to particular property fall roughly into four categories: 1. Where the zoning ordinance attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 P. 14]; see *Biscay* v. *City of Burlingame,* 127 Cal.App. 213 [15 P.2d 784].) 2. Where the restrictions create a monopoly. (*In re White,* 195 Cal. 516 [234 P. 396]; *Wickham* v. *Becker,* 96 Cal.App. 443 [274 P. 397]; *Andrews* v. *City of Piedmont,* 100 Cal.App. 700 [281 P. 78].) 3. Where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance. (*Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93].) 4. Where a small parcel is restricted and given less rights than the surrounding property, as where a lot.in the center of a business or commercial district is limited to use for residential purposes, thereby creating an ''island'' in the middle of a larger area devoted to other uses. (*Reynolds* v. *Barrett,* 12 Cal.2d 244 [83 P.2d 29]; see *Hagenburger* v. *City of Los Angeles,* 51 Cal.App.2d 161 [124 P.2d 345]; *Hurst* v. *City of Burlingame,* 207 Cal. 134 [277 P. 308].) There is no claim that the present case falls within the first two categories, and it clearly appears that it does not come within either of the others, but instead presents the exact opposite of the fourth class.

An examination of the facts in *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93], indicates clearly that the present case has nothing in common with that case. In the Skalko case, the twenty-four hour operation of an adjacent cannery, with its accessories, the existence of heavy automobile and truck traffic in front of plaintiff's property day and night, and the frequent operation of a near-by railroad, which hauled freight cars to the cannery at all hours, rendered the property entirely unsuited to and unusable for the *only* purpose permitted by the ordinance. Such is not the case here, and there is no finding or conclusion of law to that effect, nor are there any findings as to the existence of any physical facts which would justify the court in making such a conclusion. On the contrary the court merely concludes that the new buildings

are more adaptable to use for multiple dwelling purposes and that it would be impracticable to use them for single family dwellings. Incidentally it should be noted that the court does not find that there would have been any impropriety or unreasonableness in applying the ordinance to the property as it existed *before* plaintiff built the new buildings, but deals solely with conditions existing after plaintiff had proceeded in disregard of the ordinance.

Likewise, the present case does not come within the fourth class listed above. So-called "spot" zoning results in the creation of two types of "islands." As pointed out above, the objectionable type arises when the zoning authority improperly limits the use which may be made of a small parcel located in the center of an unrestricted area. ▮ The second type of "island" results when most of a large district is devoted to a limited or restricted use, but additional uses are permitted in one or more "spots" in the district. It is the second type of "island" that is presented in this case, and if there is any discrimination, it is in *favor* of the "island" since it may be devoted to a greater number of uses than the surrounding territory. It is clearly within the discretion of the legislative body of the city to determine whether such an "island" should be enlarged or not, and the mere fact that the owner may enjoy greater benefits, or that his property will be enhanced in value, if the size of the island is increased, cannot entitle him to compel the allowance of such increase in size. (*Rehfeld v. City etc. of San Francisco,* 218 Cal. 83 [21 P.2d 419]; see *Otis* v. *City of Los Angeles,* 52 Cal.App.2d 605 [126 P.2d 954]; *Kort* v. *City of Los Angeles,* 52 Cal.App.2d 804 [127 P.2d 66]; *Rubin* v. *Board of Directors,* 16 Cal.2d 119 [104 P.2d 1041].) Zoning necessarily involves boundary problems and, when "spot" zoning is permitted in a residential district, the legislative body must determine where the boundary is to be placed, attempting, as far as possible, to minimize the resulting inconveniences. This is essentially a legislative problem, and the determination may be attacked only if there is no reasonable basis therefor. Often there may be little difference in the character of the property on either side of the line, but such a showing will not justify a judicial alteration or extension of the boundaries. If an owner could compel the extension of the boundaries of the "island," by any such showing, then the next adjoining owner in turn could likewise make the same kind of a showing and obtain another

extension of the "island" to his property, and in a short time there would be an end to the effectiveness of all zoning legislation.

In considering the plaintiff's contentions it must be remembered, first, that he does not occupy the position of one whose property is unduly restricted as to use in comparison with the surrounding territory, but instead he is simply seeking to enlarge an "island" which is zoned for additional uses; and, second, that many of the alleged hardships of which he complains are admittedly the result of his own actions in violating the duly enacted ordinances of the city. "No one can take advantage of his own wrong" (Civ. Code, § 3517), and plaintiff should not be permitted to benefit from his own wrongdoing. (*Acker* v. *Baldwin*, 18 Cal.2d 341 [115 P.2d 455].) For instance, he cannot derive any support from the finding that the four new apartments are more adaptable and more useful for multiple dwelling purposes than for single family dwellings. If true, this is the result of plaintiff's deliberate and willful violation of the zoning ordinance.

The constitutionality of the ordinance or of its application to particular property must be determined upon the basis of the facts and conditions as they existed prior to the time plaintiff proceeded in disregard of the ordinance, and the court must wholly ignore all conditions which resulted from the plaintiff's actions. If this were not so, then any landowner could violate a zoning ordinance with impunity, secure in the knowledge that, by just going far enough, by devoting his land to unrestricted uses, and by creating a situation in which enforcement would result in hardship to him, he could obtain a judgment that the ordinance is unconstitutional as applied to the *then existing* circumstances as changed by his actions. While a plaintiff may ignore an unconstitutional ordinance, this does not, and cannot, mean that a person may proceed contrary to an ordinance and then claim that it is unconstitutional because of the results and effects *of his own actions* in disregard of the ordinance.

In this case, it appears that the trial court was improperly influenced by the conditions which resulted from plaintiff's actions in disregard of the ordinance. This is indicated by the trial court's statement that the constitutionality of the ordinance must be determined "as it applies to plaintiff under conditions now existing," and by the finding to the effect that the use of the newly erected buildings for multiple

dwelling purposes is in the enjoyment of a substantial property right of plaintiff; that they are so placed and erected that they are more adaptable and more useful for multiple dwelling purposes than for single family dwellings; that it is impracticable to limit the use of the property to single family dwellings; and that the new buildings present a decided improvement in the general view. If such findings, or the other findings in this case, would uphold a judgment of unconstitutionality of the ordinance, it necessarily follows that no such ordinance would be enforceable if the landowner acted first and devoted his land to forbidden uses. There is, and there can be, no legal principle which will thus place a premium on deliberate violation of law, and allow the violator to profit by his own wrong.

Plaintiff places great reliance on the fact that the trial judge viewed the premises, and he claims that what the judge saw is independent and additional evidence, and that the sufficiency of the evidence cannot be questioned. This may be admitted for the sake of argument, since it clearly appears that the findings do not support the judgment.

The court found that the use of the property for multiple dwelling purposes is in the enjoyment of a substantial property right of plaintiff. To the extent that this is an adjudication of the existence of a right to use the property for such purposes, in violation of the ordinance, it is an improper conclusion of law; and to the extent that it is a finding that plaintiff would derive a benefit from such uses, it is immaterial.

Another finding is to the effect that such use does not impede, hinder or interfere with the attainment of the objectives of the zoning ordinance. This finding, while really a conclusion of law, is immaterial and does not justify a decision for plaintiff in the absence of facts showing that the ordinance is unreasonable or invalid as applied to plaintiff's property. The fact that there is no showing by the city that any harm would result to the zoning plan does not render a denial of the extension unreasonable. (*Rehfeld* v. *City etc. of San Francisco*, 218 Cal. 83 [21 P.2d 419].)

Plaintiff is likewise not aided by the finding that multiple dwelling status appears to exist on a small part of the next block on both sides of Marshall Boulevard between Acacia and F Streets. There is no other finding as to multiple dwelling use in the vicinity, except as to plaintiff's property, and according to the record (see map) the only other property in the immediate vicinity which is zoned to permit such use is a

small section located some three blocks from the property in dispute. ██ The mere existence of some adjacent property devoted to other uses does not destroy the character of restricted property for residential purposes or render the restriction arbitrary. (*Acker* v. *Baldwin,* 18 Cal.2d 341, 345 [115 P.2d 455] ; *Kort* v. *City of Los Angeles,* 52 Cal.App.2d 804, 810 [127 P.2d 66] ; *Smith* v. *Collison,* 119 Cal.App. 180, 186 [6 P.2d 277].) The fact that there are single family dwellings near by (on lots 71 and 72) which occupy slightly less than the amount of land required for such dwellings by the terms of another ordinance does not show that there has been any unreasonable discrimination, regardless of whether they were erected in violation of law or pursuant to a variance granted by the proper authority. ██ The presence of near-by unsightly multiple dwellings on plaintiff's own property (middle of lots 69 and 70) cannot excuse or sanction his violation of the zoning ordinance, or furnish any reason for the granting of any extension of use to the remainder of his property. ██ The finding that land values have increased because of the development of a community business center does not indicate any abuse of discretion or unreasonableness in the refusal to extend the district in which business or other uses are permitted.

██ The fact that there is a housing shortage might justify the city, or perhaps even the court, under proper conditions, in temporarily suspending the operation of the zoning ordinance during an emergency (see *City of San Diego* v. *Van Winkle,* 69 Cal.App.2d 237 [158 P.2d 774]), but it furnishes no justification for a judicial decision voiding the operation of the ordinance for all time to come or for plaintiff's action in violating the ordinance.

██ The findings that the enforcement of the ordinance would be oppressive, confiscatory and an unreasonable restriction on plaintiff's property rights, that it is impracticable to limit the use of the westerly 112 feet of lots 69 and 70 to a single family classification, that to do so constitutes an unwarranted and unreasonable invasion of plaintiff's property rights, and that no consideration of public health, peace, morals, safety or welfare requires that plaintiff be prohibited from using the structures as multiple dwellings, are in reality not findings of fact, but conclusions of law, and they can stand only if they are supported by the findings of fact. In this case, there are no findings of fact to support these conclusions, and the judgment must fall.

In view of the findings of fact in this case, we cannot say that there was any abuse of legislative discretion in denying plaintiff's requests for rezoning, or that there has been any arbitrary, oppressive or unreasonable application of the zoning ordinance to plaintiff's property, and hence the judgment in his favor cannot be sustained.

The judgment is reversed.

Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The trial court granted an injunction against the enforcement of a zoning ordinance of defendant city of San Bernardino, as against certain property owned by plaintiff in that city.

The property herein involved is the west 112 feet of lots 69 and 70, that is, a parcel with 100 foot frontage on Acacia Avenue and extending 112 feet from Acacia Avenue toward E Street in the city of San Bernardino. E Street runs north and south and is intersected by Marshall Boulevard which runs east and west. Acacia Avenue crosses Marshall Boulevard to the east of E Street, a distance of 394 feet. Marshall and E are 82.5 foot streets and Acacia is a 60-foot street. A strip extending from the west side of E to the east side of Acacia along the north side of Marshall is 100 feet wide apparently consisting of lots 71 and 72, each with a 50-foot width on Acacia and E. The strip immediately to the north of lots 71 and 72 is also 100 feet wide consisting of lots 69 and 70, each 50 feet wide on Acacia and E. All four corners of the intersection of Marshall and E are zoned for business. Particularly in regard to the block where the property involved is located, the area of the business zone includes the east 282.15 feet of lots 69 and 70 (that is, all of those lots except the west 112 feet here involved) and the east 150 feet of lots 71 and 72. All of the other property in the vicinity is in a zone calling for single family dwellings. However there are four houses on the west portion of lots 71 and 72 which occupy spaces of less than the 5,000 square feet required for single family dwellings. In other words, the business zone is a spot neighborhood business district.

E Street and Marshall Boulevard are main thoroughfares, carrying considerable traffic. On the northwest corner of the intersection of those streets, 85 feet on Marshall and 100 feet

on E is a two-story building with commercial enterprises on the first floor and apartments on the second. The other three corners are devoted to business. Plaintiff has constructed on the portion of lots 69 and 70 lying east of the west 112 feet two apartment buildings, with 52 feet between them. The structures on the west 112 feet are continuations of those buildings and the area between them remains the same. A 10-foot right of way runs from Marshall to the 52-foot strip thence west to Acacia. He extended those apartments on the east portion of lots 69 and 70 to the west portion thereof making in each extension, as found by the court, "housing spaces adaptable and suitable for apartments and that there are two such apartments over the said lower portions of said buildings on said lots now in use for single family residences, and that there is in the upper portion of said building extending upon said west 112 feet of said Lot 69 additional housing space adaptable and suitable for apartment use, and that there is in the upper portion of said building extending upon said west 112 feet of said Lot 70 additional housing space adaptable and suitable for apartment use, making suitable and desirable housing space for two separate families overhead on said west 112 feet of said Lot 69 and for two separate families overhead on said west 112 feet of said Lot 70." The buildings could be used for single family dwellings or for two family dwellings on the second floor of each inasmuch as they have full facilities, including kitchens.

The validity of the ordinance generally is not questioned. It is claimed to be invalid as applied to the use of the structures on the west half of lots 69 and 70, and that because of changed conditions the ordinance is invalid as applied to plaintiff.

Defendant contends that the findings do not support the judgment nor the evidence the findings. The court found that "such a use [of the structures for multiple dwelling purposes] is in the enjoyment of a substantial property right of said plaintiff; that such a use is not detrimental to the health, safety, morals or welfare of the persons residing in the community and neighborhood in which said apartments are situated or of the residents or people of said City; that such a use does not impede, hinder or interfere in any manner whatsoever with the attainment of all the objectives for which said Ordinance was enacted; and that said four apartments on the west 112 feet of said lots 69 and 70 are so placed and erected

that they are more adaptable and more useful for multiple dwelling purposes than for the purposes for which said territory is now zoned in that said apartments are now located in, adjoin and are on the same lots as constructions and properties now used for business and commercial purposes, and that the enforcement of the provisions of said Ordinance as to said plaintiff as to said four apartments on the west 112 feet of lots 69 and 70 is an oppressive, confiscatory and unreasonable restriction of his property rights therein and thereto.'' And ''that multiple dwelling status appears to exist between Acacia St. and F Street on both sides of Marshall Blvd.; that between Acacia St. and E St. along said Marshall Blvd. on the north side are four frontages, . . . that the square feet occupied by each is in each case less than 5000 sq. ft., two on the south side of Marshall Blvd. between E St. and Acacia St. . . . each having an are[a] of less than 5000 sq. ft. Said City Ordinance No. 1675 in Article 6, Section 1, Zone 1, sets out that a requirement of an area of 5000 sq. ft. is the minimum requirement for an area for a single family residence, unless an existing survey already made should prevent the same, and the actual existing conditions appear to be that there are two dwellings on Lot 2 Thompson Bros. Poultry Subdivision on a frontage of 60 ft. just across Acacia St. from plaintiff's said west 112 ft. of said Lots 69 and 70 . . . that it is impract*ible* to maintain and limit the use of each to a single-family classification and that to do so constitutes an unwarranted and unreasonable invasion of plaintiff's property rights and that no consideration of public health, peace, morals, safety or welfare requires that plaintiff be prohibited from using said upper stories of said structure for the housing of two family-units on said west 112 feet of said Lot 69 and for the housing of two family units on said west 112 feet of said Lot 70.''

The findings clearly support the judgment. As seen, there are many other multiple dwellings as well as a business district in the vicinity. The property in the rest of the block and the instant property in relation thereto as viewed by the trial court could point to the conclusion that it was impracticable and unreasonable to confine its use to single family dwellings. Most of the buildings in the area have been erected within the last four years. Changes have occurred in the neighborhood and especially immediately adjoining the property in question. The evidence supports the findings of the court inasmuch as the trial court viewed the property and its surroundings.

The observations of a trial judge in viewing the premises or scene of the controversy is evidence in the case upon which findings may be based. (*Neel* v. *Mannings, Inc.*, 19 Cal.2d 647 [122 P.2d 576]; *Gates* v. *McKinnon*, 18 Cal.2d 179 [114 P.2d 576]; *Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699 [28 P.2d 919]; *People* v. *Milner*, 122 Cal. 171 [54 P. 833]; *Gastine* v. *Ewing*, 65 Cal.App.2d 131 [150 P.2d 266]; *MacPherson* v. *West Coast Transit Co.*, 94 Cal.App. 463 [271 P. 509]; *Vaughan* v. *County of Tulare*, 56 Cal.App. 621 [205 P. 21].)

Defendant asserts, however, that the several factors contained in the findings do not support the judgment. First, it claims that the fact that property used for business adjoins residence property does not make the zoning ordinance invalid (*Acker* v. *Baldwin*, 18 Cal.2d 341 [115 P.2d 455]; *Reynolds* v. *Barrett*, 12 Cal.2d 244 [83 P.2d 29]; *Feraut* v. *City of Sacramento*, 204 Cal. 687 [269 P. 537]; *O'Rourke* v. *Teeters*, 63 Cal.App.2d 349 [146 P.2d 983]; *Kort* v. *City of Los Angeles*, 52 Cal.App.2d 804 [127 P.2d 66]; *Smith* v. *Collison*, 119 Cal.App. 180 [6 P.2d 277]). In the Baldwin and Feraut cases the attack was a general one upon the whole ordinance. In the other cases there was either an affirmance of the trial court's judgment or the physical circumstances were not the same. Second, that nearby boulevards do not invalidate single family dwelling ordinances, citing *O'Rourke* v. *Teeters, supra,* and *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 P. 388], and third, that the existence of other property not conforming to the ordinance or to which a variance has been allowed is not sufficient to void the ordinance. (See *Rehfeld* v. *City etc. of San Francisco*, 218 Cal. 83 [21 P.2d 419]; *Feraut* v. *City of Sacramento*, 204 Cal. 687 [269 P. 537]; *Magruder* v. *City of Redwood*, 203 Cal. 665 [265 P. 806]; *Brown* v. *City of Los Angeles*, 183 Cal. 783 [192 P. 716]; *Otis* v. *City of Los Angeles*, 52 Cal.App.2d 605 [126 P.2d 954]; *Harris* v. *City of Piedmont*, 5 Cal.App.2d 146 [42 P.2d 356]; *Ex parte Ruppe*, 80 Cal.App. 629 [252 P. 746].) However, it is unquestionably true that "No *one* factor determines the question of what is practical difficulty or unnecessary hardship, but *all* relevant factors, when taken together, must indicate that the plight of the premises in question is unique in that they cannot be put reasonably to a conforming use because of the limitations imposed upon them by reason of their classification in a specified zone." (*Brackett* v. *Board of Appeal of Building Department*,

311 Mass. 52 [39 N.E.2d 956, 961].) [Emphasis added.] Considering all of the factors present in the instant case combined with the information obtained by the court in its view of the premises, it cannot be said that it was not justified in finding that the enforcement of the ordinance as to the property here involved would have been arbitrary and unreasonable, and therefore invalid. A case closely analogous is *Skalko* v. *City of Sunnyvale,* 14 Cal.2d 213 [93 P.2d 93]. There plaintiff's property zoned as residential was located near railroads and a cannery and farm property. This court *reversed* a judgment of the trial court which denied relief. The court said at page 216: ''Considering all of the facts shown by the record, it clearly appears beyond question that the land owned by the appellant is entirely unsuited for residential purposes. The adjoining cannery with the continuous noise which must necessarily result from twenty-four hour operation, creates a situation similar to that which is found in the industrial part of a great city. Certainly, no one wants to live next door to a large factory, and the question whether any consideration of public health, peace, safety, or general welfare justifies the continued restriction upon the appellant's property which prohibits its use for commercial purposes is not fairly debatable. In its application to the land owned by the appellant, the ordinance is void.'' Likewise, in the instant case the court could have, from all the circumstances as developed in the evidence and its view of the premises concluded, as it did, that plaintiff's property was not suitable for single family structures.

The majority decision is bottomed upon the erroneous premise that merely because plaintiff violated the ordinance he is not entitled to claim that it is unconstitutional as applied to him, or stated another way, that the unconstitutional hardship of the ordinance as applied to him was brought about by his violation of the ordinance. Manifestly, it is wholly immaterial whether plaintiff violated the ordinance or not. If it was, as the trial court determined, unconstitutional as applied to him, it was in effect no law and he was justified in ignoring it. He could have obtained an injunction restraining its enforcement as to him or taken the chance of the validity of his contention of unconstitutionality and refused to comply with it. *The erection of multiple family dwellings by him was not the reason that the ordinance was invalid as to him.* As above pointed out there are many other

multiple dwellings in the immediate vicinity as well as a business district. Changes have occurred in the neighborhood immediately adjoining plaintiff's property. The judge of the trial court viewed the premises and concluded that to apply the ordinance to plaintiff's property is unreasonable and arbitrary. He must be considered as having seen anything and everything that would point to and establish such unreasonableness.

It is conceded in the majority opinion that a zoning ordinance is unconstitutionally applied "where the use of adjacent property renders the land entirely unsuited to or unusable for the only purpose permitted by the ordinance" and "where a small parcel is restricted and given less rights than the surrounding property." It cannot be doubted that such is the situation here. At least the trial court may, from its observation, have concluded that those conditions existed. While the property in question is not wholly surrounded by business and multiple dwellings it is substantially in that situation. The majority opinion overlooks the existence of many multiple family dwellings in the area even though the "business district" may be only a spot zone.

The majority opinion dwells on the ideas that "Zoning necessarily involves boundary problems and, when 'spot' zoning is permitted in a residential district, the legislative body must determine where the boundary is to be placed, attempting, as far as possible, to minimize the resulting inconveniences. This is essentially a legislative problem, and the determination may be attacked only if there is no reasonable basis therefor. Often there may be little difference in the character of the property on either side of the line, *but such a showing will not justify a judicial alteration or extension of the boundaries.*" [Emphasis added.] The essence of these statements is that the nature of adjoining property has no bearing upon the validity of the application of an ordinance to particular property. *That is squarely contrary to the holding of this court in Skalko v. City of Sunnyvale, 14 Cal.2d 213 [93 P.2d 93].* In that case a cannery was located near plaintiff's property which was zoned for residences. *Even though the question presented was merely one of boundaries* this court *reversed* the trial court and held the zoning ordinance was invalid as applied to plaintiff's property because with the nearby cannery it was not feasible to use it for residential purposes. This court stated: "Where the *exercise* of

*that power results in consequences which are oppressive and unreasonable,* courts do not hesitate to protect the rights of the property owner against the unlawful interference with his property.'' [Emphasis added.] Likewise in the instant case the use of the property in question for single family dwellings is not feasible or practicable because of the surrounding circumstances and change in the neighborhood. The property is no longer adapted to that purpose and to compel the plaintiff to make only such use of it is ''oppressive and unreasonable.''

Finally, it is argued in the majority opinion, and that thought is probably the decisive factor, that: ''The courts cannot write the zoning laws and cannot say that the legislative body has erred in drawing the lines of the districts, or in restricting the territory devoted to business or to multiple dwellings, unless there is a clear showing of abuse of legislative discretion, i. e., that the restrictions are unreasonable.'' That is to say, it is a legislative question whether the ordinance is being applied unreasonably. That is not true. If it were true, the courts could not declare that as to certain property the ordinance cannot constitutionally apply. In *Reynolds* v. *Barrett,* 12 Cal.2d 244, 250 [83 P.2d 29], this court, after referring to the presumptions in favor of the constitutionality of a zoning ordinance generally, stated: ''This holding, however, is not decisive of the issues here presented. . . . It is obvious that by a zoning ordinance a city cannot unfairly discriminate against a particular parcel of land. If the general scheme of zoning is sound and valid, nevertheless *the courts may properly inquire as to whether the scheme of classification and districting has been applied fairly and impartially in each instance.''* [Emphasis added.] And in *Rubin* v. *Board of Directors,* 16 Cal.2d 119, 126 [104 P.2d 1041], the court declared that although the denial by the local planning commission of an application for a variance from the ordinance is not reviewable in the courts, ''the finality of the board of directors' determination does not bar the respondents from *asserting in a judicial proceeding that the zoning law is unconstitutional as applied to their property.''* [Emphasis added.] Moreover, the legislative body cannot be said to have exercised its judgment with respect to the propriety of the ordinance as applied to plaintiff's property. *Circumstances have changed* and that body has

not reconsidered the ordinance in the light of the changes. It has merely done nothing.

The effect of the majority opinion in this case is to commit to the legislative body the solution of all questions of both fact and law which arise when a zoning ordinance is attacked for unreasonableness in its application to certain property unjustly affected thereby. This is contrary to the rule which has been uniformly followed in the prior decisions of this court hereinabove cited and discussed. The decision of the trial court is in accord with these decisions and should therefore be affirmed.

Shenk, J., concurred.

Schauer, J.—I concur in the conclusion reached by Mr. Justice Carter and generally in the discussion supporting it.

Respondent's petition for a rehearing was denied December 23, 1946. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.